FIREMAN'S FUND AMERICAN INSURANCE COMPANIES,
Plaintiff-Appellant, v. BURNS ELECTRONIC SECURITY SERVICES, INC.,
Defendant-Appellee.

First District (3rd Division)    No. 79-2135

Opinion filed December 1, 1980.—Modified on denial of rehearing March 11, 1981.

Jack F. Clifford & Associates, Ltd., of Chicago (Jack F. Clifford and Harvey Paulsen, of counsel), for appellant.

Elliot R. Schiff, of Sweeney & Riman, Ltd., of Chicago, for appellee.

Mr. JUSTICE SIMON delivered the opinion of the court:

This case concerns the law of liability for consequential economic losses caused by a defective product and suffered by a user in privity with the product supplier.

The defendant, Burns Electronic Security Services, Inc. (Burns), contracted to provide a burglar alarm system to plaintiff's insured, Henry Kay Jewelers (Henry Kay). The system was supposed to send a signal of any irregular entry to the police and to Burns' office. Burns would then send someone to the scene to investigate. The system remained the property of Burns. The contract absolved Burns from any liability for losses caused by failure of the system, even if caused by Burns' negli-

gence. If Burns was held liable, damages were to be limited to $250. The exculpation clause recited that Burns' fee was unrelated to the value of the property at risk, and warned that Henry Kay was responsible for procuring insurance if it wished any. Contrary to the plaintiff's assertion at oral argument, the contract was not one of adhesion. This is shown by typed and handwritten amendments to Burns' printed form, mostly in Henry Kay's favor. The exculpation clause does, however, appear to be standard in the industry.

Burglars stole $800,000 worth of jewelry from Henry Kay. Fireman's Fund paid its insured the policy limits and sued Burns. It alleged that the burglary was due to a failure in the alarm system. Count I of the complaint was for breach of warranty, count II for negligence and count III in strict liability for a defective product. The circuit court struck count III and reduced the damages on counts I and II to $250 in keeping with the limitation on liability in the parties' contract. By agreement, the whole cause was then dismissed and Fireman's Fund appealed.

The plaintiff first argues that the exculpation clause of the contract is unconscionable and therefore unenforceable, and that the ruling limiting damages on counts I and II was therefore erroneous. However, an identical clause was upheld in *Pick Fisheries Inc. v. Burns Electronic Security Services, Inc.* (1976), 35 Ill. App. 3d 467, 342 N.E.2d 105. Accord, *First Financial Insurance Co. v. Purolator Security, Inc.* (1979), 69 Ill. App. 3d 413, 388 N.E.2d 17.

The terms of this contract belie unconscionability. The chance of a burglary and the potential loss depended not only on the quality of the alarm but on many factors peculiar to Henry Kay and within Henry Kay's knowledge and control. For example, the type and quantity of merchandise in the store, perhaps the prime motivation for a breakin, was for Henry Kay to determine, not Burns. It was not unreasonable for Burns to feel that the jeweler was better able than itself to buy any desired amount of insurance at appropriate rates. Burns could properly insist on the exculpation clause to make certain that the risk of a burglary lay on the jeweler, not on Burns. It should also be noted that the product was designed to outwit the ever-advancing burglary profession. The risk that the protection provided by the alarm system would not be enough was substantial regardless of how good the particular alarm was.

■■ Allocating the risk to Henry Kay was thus not a bargain "which no man in his senses, not under delusion, would make * * * and which no fair and honest man would accept" (*First Financial*, 64 Ill. App. 3d 413, 419, 388 N.E.2d 17, 22). It does not suggest unfair surprise or oppression (Ill. Ann. Stat., ch. 26, par. 2—302, Uniform Commerical Code Comment 1 (Smith-Hurd 1963)). On the contrary, the exculpation clause was a commercially sensible arrangement, and the plaintiff is bound by it.

Plaintiff cast its third count in strict tort liability in an effort to circumvent the contractual limitation of liability. In arguing that this count should be reinstated plaintiff asserts that the loss of the jewelry was equivalent to its physical destruction and its value is recoverable therefore under a theory of strict tort liability.

■■ The basic dispute is over the nature of an economic loss. In Illinois, economic losses are not recoverable in tort. (*Album Graphics, Inc. v. Beatrice Foods Co.* (1980), 87 Ill. App. 3d 338, 350, 408 N.E.2d 1041, 1050; *Alfred N. Koplin & Co. v. Chrysler Corp.* (1977), 49 Ill. App. 3d 194, 364 N.E.2d 100.) Although *Album Graphics* and *Koplin* both proceeded on negligence theories, if economic loss resulting from negligence is not recoverable in tort, we see no reason for permitting recovery for loss of the same character in tort without fault.[1] If Henry Kay suffered economic loss, the circuit court properly dismissed count III.

■■ Economic loss, as we view it, is the loss of the benefit of the user's bargain. It is the loss of the service the product was supposed to render, including loss consequent upon the failure of the product to meet the level of performance expected of it in the consumer's business. In *Koplin*, 49 Ill. App. 3d 194, 199, the court defined "economic loss" as loss resulting from a product "inferior in quality" which "does not work for the general purposes for which it was manufactured and sold," and we agree with that statement. We differ from the *Koplin* definition of economic loss, however, because in *Koplin* the court added to its definition a dichotomy between physical harm and economic loss. We see no reason to make the presence or absence of physical harm the determining factor; the distinguishing central feature of economic loss is not its purely physical characteristic, but its relation to what the product was supposed to accomplish. For example, if a fire alarm fails to work and a building burns down, that is "economic loss" even though the building was physically harmed; but if the fire is caused by a short circuit in the fire alarm itself, that is not economic loss.

The principal concern of the buyer is, of course, whether the product will accomplish what it is designed to do. Economic loss should be contrasted with loss which the parties could not reasonably be expected to have in mind such as hazards peripheral to what the product's function is. For example, if a defect in the fire alarm sets off a fire or even causes a stench which drives customers away and consequently results in loss of profits, without any physical harm, this is a peripheral hazard producing a noneconomic loss.

The definition of economic loss is inextricably linked to the reasons

---

[1] See, however, *Mead Corp. v. Allendale Mutual Insurance Co.* (N.D. Ohio 1979), 465 F. Supp. 355, 367, holding that economic loss can be recovered in Ohio under strict liability in tort, but not under a negligence theory.

why that type of loss is removed from the field of tort liability. When goods are sold, their soundness is the core of the bargain. It is for the parties to decide what the consequences will be if the bargain founders. An entire body of law, contracts—of which product warranties is a part—is available to govern those areas of the relationship concerning which the bargain is silent. There is thus no need for the law of torts to define the rights of parties in privity when they have done so themselves. When a buyer loses the benefit of his bargain because the goods are defective, that is, when he suffers economic loss, he has his contract to look to for remedies. Tort law need not, and should not, enter the picture. *Album Graphics Inc.*

The case might be different had the alarm done or threatened personal injury, which has a special place in the law (*cf.* Ill. Rev. Stat. 1979, ch. 26, par. 2—719(3) (limitation of damages for personal injury prima facie unconscionable)); but it did not. Nor do we detect here any other reason to adandon contract law and allocate risks by an inflexible rule of tort law, as the plaintiff asks.

Henry Kay suffered economic loss. It wanted a workable alarm system; despite its bargain, it did not receive one. Instead it was provided with an alarm system which failed. It is true that the losses it suffered as a consequence of this failure were very large, but the fundamental character of Henry Kay's grievance is that it was sold a poor burglar alarm. This was not an uncontemplated side effect. The soundness of the system was the core of the commercial bargain. Henry Kay should have known the system might fail and that under its contract with Burns it bore that risk. If it did not want to do so, it should have spoken up before it signed. Because it was in privity, it could easily have done so.

As economic loss, the value of the lost jewels cannot be recovered in tort. If Henry Kay did not get an alarm of the quality it thought it had paid for, that is a matter for the law of warranty, not strict tort liability. Count III was correctly dismissed.

Judgment affirmed.

RIZZI, P. J., and McGILLICUDDY, J., concur.