**U.S. HOME CORPORATION, Plaintiff,**

v.

**GEORGE W. KENNEDY CONSTRUC-
TION COMPANY, INC., et
al., Defendants.**

**No. 82 C 7775.**

United States District Court,
N.D. Illinois, E.D.

June 7, 1983.

Michael A. Braun, Feiwell, Galper & La-
sky, Ltd., Chicago, Ill., for plaintiff.

David J. Gibbons, Chadwell & Kayser,
Ltd., Chicago, Ill., for Armco, Inc.

MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

U.S. Home Corporation ("U.S. Home")
filed this diversity action against several
individuals and corporations that furnished
services or products in connection with a
sewer construction project for which U.S.
Home was general contractor. Two of the
defendants moved under Fed.R.Civ.P.
("Rule") 12(b)(6) for their dismissal from
this lawsuit:

1. George W. Kennedy Construction
Company, Inc. ("Kennedy"), the subcon-
tractor that constructed and installed
some of the sanitary and storm sewers
and water mains in the project; and

2. Armco, Inc. ("Armco"), the manu-
facturer of water mains and sewer com-
ponents used by Kennedy.

Kennedy's motion scarcely merited discus-
sion and has been denied for reasons an-
nounced orally from the bench May 6, 1983.
Because Armco's motion requires analysis,
it is dealt with in this memorandum opinion
and order.

Count VIII, the only claim directed
against Armco, sounds in strict liability:

12. The truss pipe, its parts and compo-
nents, were manufactured by Defendant,
ARMCO, INC. in an inherently defective
condition, and were in that condition at
the time the pipe left the possession and
control of that Defendant.

13. The defective condition of the pipe
rendered the sewer system inoperative
because of extensive water infiltration,
the partial and total collapse of portions
of the system and the truss pipe's total
failure .to operate as required. These
failures were all the direct and proximate
result of inherent defects in the truss
pipe.

Under *Klaxon Co. v. Stentor Electric Manu-
facturing Co.,* 313 U.S. 487, 496–97, 61 S.Ct.
1020, 1021–22, 85 L.Ed. 1477 (1941) Illinois
choice of law doctrine defines the source of
substantive principles to test the legal suffi-
ciency of Count VIII. At the May 6 hear-
ing this Court asked both counsel to address
the choice of law question neither had con-
sidered in its memoranda. Both have since
answered that Illinois also provides the sub-
stantive rule of decision, and though nei-
ther's analysis is more than superficial [1] this

---

1. Count VIII is a tort claim based on strict
liability. Illinois choice of law doctrine looks in
tort cases to the jurisdiction with "the most
significant contacts," *Ingersoll v. Klein,* 46
Ill.2d 42, 48, 262 N.E.2d 593, 596 (1970). Thus
far the problem is easy. But both parties then

Court will treat those answers as a binding agreement to look to Illinois law.

Both parties claim to invoke the recent and authoritative Illinois Supreme Court decision in *Moorman Manufacturing Co. v. National Tank Co.,* 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982). As is so often the case under those circumstances, each is partly right and partly wrong.

Armco contends U.S. Home's claimed damages are "economic losses" that *Moorman* renders non-recoverable under a strict liability theory. Specifically Armco says two types of economic loss are involved:

    1.  the costs of repairing (or replacing) the allegedly inferior truss pipe and

    2.  consequential losses arising from the pipe's qualitative defects.

U.S. Home counters that Count VIII escapes *Moorman's* strict liability limitation by seeking redress for both economic loss and property damage to other portions of the sewer system.

Buttressed by reasonable inferences from the Complaint, U.S. Home's response is persuasive. *Moorman,* 91 Ill.2d at 85, 61 Ill. Dec. at 753, 435 N.E.2d at 450 (emphasis added) teaches "where *only the defective product is damaged,* economic losses caused by qualitative defects falling under the ambit of a purchaser's disappointed. expectations cannot be recovered under a strict liability theory...." They are instead redressable only under contractual principles of warranty law (not asserted by U.S.

Home against once-removed supplier Armco).

Admittedly the line between property damage and economic loss is a blurred one.[2] But *Moorman's* attempt to clarify those concepts is sufficiently illuminating to dispose of Armco's Rule 12(b)(6) challenge (91 Ill.2d at 82–83, 61 Ill.Dec. at 752, 435 N.E.2d at 449):

> The demarcation between physical harm or property damage on the one hand and economic loss on the other usually depends on the nature of the defect and the manner in which the damage occurred. (*Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.* (3d Cir.1981), 652 F.2d 1165, 1169.) As one commentator observed in applying the definition of economic loss with respect to damage to the product:
>
> > When the defect causes an accident "involving some violence or collision with external objects," the resulting loss is treated as property damage. On the other hand, when the damage to the product results from deterioration, internal breakage, or other non-accidental causes, it is treated as economic loss. It is also important to distinguish between "direct" and "consequential" economic loss. * * * Direct economic loss also may be measured by costs of replacement and repair. Consequential economic loss includes all indirect loss, such as loss of profits resulting from inability to make use of the defective product. (Note, *Economic Loss in*

make the facile (and analytically unsupported) assumption the *injury* took place in Illinois (even under the most significant contacts test, the place of injury has presumptive importance). That of course confuses the commission of the tort with its manifestation. Armco committed its claimed wrong when it *manufactured* the goods or perhaps when it *delivered* them to its purchaser. No one knew Armco had done wrong, however, until an occurrence took place: collapse of the system. Normally the question of what a tort is and when it is committed is confronted in the context of the discovery rule, and at least in Illinois the usual rule is the sensible one that the tort is committed when the tortfeasor has done the wrong thing. It is highly doubtful *that* took place in Illinois. But having received no real answers

to what seemed to be clearly-put questions, this Court is disinclined either to repeat the questions or to have its law clerk do the parties' work for them.

2.  Contrast the analysis in the *Moorman* majority opinion with Justice Simon's special concurrence, 91 Ill.2d at 95, 61 Ill.Dec. at 758, 435 N.E.2d at 455, and with the same Justice's pre-*Moorman* opinion while a member of the Illinois Appellate Court, *Fireman's Fund American Ins. Co. v. Burns Electronic Security Services, Inc.,* 93 Ill.App.3d 298, 48 Ill.Dec. 729, 417 N.E.2d 131 (1st Dist.1981). Because this is a diversity case, this Court is constrained to follow the *Moorman* majority, however persuasive it may find Justice Simon's approach.

Products Liability Jurisprudence, 66 Colum.L.Rev. 917, 918 (1966).) Accord, e.g., Pennsylvania Glass, 652 F.2d 1165, 1169 . . . .

Pennsylvania Glass was the case with which Moorman specifically stated its agreement immediately before the passage quoted in the preceding paragraph of this opinion.

Surely Count VIII ¶ 13's assertion as to "the partial and total collapse of portions of the [sewer] system" can be fairly read as a claim that the defective truss pipe actually damaged other segments of the sewer system. To that extent at least, Count VIII arguably asserts the sort of accidental damage that gives rise to compensable property damage under Moorman.[3] In any event, the status of that damage claim must await an inquiry into "the nature of the defect and the manner in which the damage occurred," as Moorman put it. Obviously a pleading-directed motion cannot be the vehicle for resolving such factual issues.[4]

### Conclusion

Armco's motion to dismiss is denied. Armco is ordered to answer Complaint Count VIII on or before June 21, 1983.

3. Armco unconvincingly relies on a passage in Fireman's Fund, 93 Ill.App.3d at 300, 48 Ill.Dec. at 731, 417 N.E.2d at 133, for the proposition that damage to other property caused by a product's failure to operate constitutes economic loss:

> If a fire alarm fails to work and a building burns down, that is "economic loss" even though the building was physically harmed.

Of course one of the principal reasons for Justice Simon's special concurrence in Moorman was the majority's failure to follow his earlier Fireman's Fund analysis. Again this Court cannot adhere to Fireman's Fund in the face of Moorman's divergent approach.

4. By contrast the other two apparent elements of Count VIII's damage claim seem to be "economic loss" in Moorman terms on the pleadings alone:

1. U.S. Home's allegation as to "the truss pipe's total failure to operate as required" simply means the pipe performed its intended function inadequately. And that is the essence of economic loss under Moorman.

2. U.S. Home also alleges the defective pipe "rendered the sewer system inoperative." That claim may also implicate only economic loss concepts, if the word "inoperative" refers not to any physical damage to the sewer system itself but merely to the system's temporary inability to function while the truss pipe remained defective.

Those "economic loss" characterizations are not fatal under Moorman, however. So long as part of Count VIII's damage claim can be recovered on strict liability grounds, Moorman, 91 Ill.2d at 80–81, 61 Ill.Dec. at 751, 435 N.E.2d at 448 appears to permit recovery for economic losses as well.