**Ingrid NELSON and Dale Nelson, Appellees,**

v.

**TODD'S LTD., Appellant.**

No. 87–60.

Supreme Court of Iowa.

June 15, 1988.

John M. Wharton and Fred L. Morris, Des Moines, and Thomas C. Farr, West Des Moines, for appellant.

Nick Critelli and Jacques D. Schira of Nick Critelli, P.C., Des Moines, for appellees.

Considered by McGIVERIN, C.J., and LARSON, CARTER, LAVORATO and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

Plaintiffs, Ingrid and Dale Nelson, filed this action against defendant, Todd's Ltd., alleging breach of express warranty and premising their petition in the alternative on the theory of strict liability in tort. The trial court submitted both theories to the jury. The court of appeals reversed, stating that the strict liability count should not have been submitted to the jury, and remanded for a new trial. We granted further review. We now affirm the court of appeals decision, reverse the judgment of the district court, and remand this case for a new trial in accordance with this opinion.

I. *Background facts and proceedings.* Plaintiffs own and operate the Green Valley Butcher Shop near Creston, Iowa. Their business comprises custom butchering, retail sale of cured meat products prepared by Ingrid Nelson, and rental of freezer-locker space.

In early 1979, plaintiffs learned of a curing agent produced by defendant called "Todd's Quick Cure." Because Todd's is an Iowa business, Ingrid decided to stop using the curing agent she had been purchasing from an out-of-state company and replace it with Quick Cure.

The purpose of curing agents is to kill bacteria which can spoil meat during the smoking process. The active ingredient in Quick Cure is sodium nitrate. The label on Quick Cure packages reads, "Contents: salt, sugar, sodium nitrate 6%. This lot has been sampled by laboratory analysis and conforms with labeling shown thereon." Without sodium nitrate, smoked meat will spoil rapidly because bacteria thrive at the warm temperatures required for smoking meat.

Ingrid used Quick Cure in her specialty meat business for over a year and a half without incident. In September 1981, Ingrid received and used a batch of Todd's Quick Cure which, as later tests by an Iowa Department of Agriculture chemist revealed, contained no sodium nitrate. Consequently, substantial quantities of meat prepared and sold by the Nelsons spoiled and were returned by their customers.

Nelsons alleged that this incident significantly damaged their business reputation leading to a substantial decline in specialty meat sales. They filed suit against Todd's seeking (1) recovery of the value of the meat that spoiled; (2) lost profits in their business both past and future; and (3) consequential loss in the value of their meat processing equipment and property. This third claim was based upon Nelsons' assertion that the building housing the butcher shop was built specially as a meat locker and butchering facility and would be worth considerably less if sold for other purposes.

Although Nelsons presented evidence to prove damage to the meat they processed for sale, they failed to keep records showing how much meat went bad or how much money was refunded to customers who purchased bad meat. Consequently, that damage claim was not submitted to the jury and plaintiffs assign no trial court error in that regard. The other alleged losses of past and future profits and loss in value of their meat processing building were submitted as consequential damage claims.

Both express warranty and strict liability theory instructions were submitted to the jury by the trial court over Todd's objections. The jury returned a verdict for Nelsons. The damage award consisted of $16,000 for lost past profits, $46,714 for lost future profits and $80,000 for diminution in the value of Nelsons' real property. The

verdict form did not require the jury to specify whether it based these awards on breach of express warranty, on strict liability in tort, or on both theories. The court entered judgment on the verdict for plaintiffs.

Todd's appealed the submission to the jury of both liability theories. We transferred the case to the court of appeals which held that the express warranty theory was properly submitted to the jury, but reversed the trial court on submission of the issue of strict tort liability. The court of appeals concluded that Nelsons were seeking commercial business damages which were purely economic and held that those damages could not be recovered under strict tort liability. Because the jury verdict was worded so that the jury's damage award might have been based upon the erroneously submitted strict liability instruction, the court of appeals concluded that the error required reversal. The court of appeals declined to address the other damage award issues raised on appeal in light of its decision to remand for a new trial.

We now address the issues raised on further review of the court of appeals decision.

II. *Strict liability.* In *Hawkeye Security Insurance Co. v. Ford Motor Co.*, 174 N.W.2d 672 (Iowa 1970) (*Hawkeye* I), we adopted the view of strict liability in Restatement (Second) of Torts, section 402A (1965), which provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for *physical harm* thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller. (Emphasis added.)

■ A. *Purely economic losses.* The issue raised here is whether the instruction based upon section 402A should have been submitted to the jury on these facts. The briefs of both parties argued the issue as a question of a plaintiff's ability to bring an action under strict liability in tort to recover for purely economic losses. The court of appeals ruled that purely economic losses are not recoverable under the strict liability theory and reversed the district court judgment.

The court of appeals conclusion, with which we agree, follows from our decision in *Cunningham v. Kartridg Pak Co.*, 332 N.W.2d 881 (Iowa 1983). The defendant in *Cunningham* manufactured a pork processing machine called a Yieldmaster. The plaintiff rented a machine from the defendant and formed a company to produce a mechanically processed pork product. When the Yieldmaster failed to produce USDA acceptable meat after repeated attempts, plaintiff's company suffered economic losses and was liquidated. Among other theories of recovery, the plaintiff sought damages from the defendant under strict tort liability. Refusing to allow recovery in strict liability, we stated:

The theories behind product liability arose from the legitimate needs of plaintiffs to recover for damages resulting from the manufacture of defective and unreasonably dangerous products. Implicit in this area of law is the notion that the defective product caused *physical harm* to the plaintiff or his property. Plaintiff does not claim any physical harm to himself from the operation of the Yieldmaster. [Plaintiff does], however, seek to have the protection of products liability law extended to shareholders [plaintiff being the principal stockholder] who have suffered business losses due to defective products used in their

corporation's manufacturing process. This is untenable.

*Id.* at 885 (citations omitted).

As we have previously stated, "The well-established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable." *Nebraska Innkeepers, Inc. v. Pittsburgh–Des Moines Corp.*, 345 N.W. 2d 124, 126 (Iowa 1984). We find no reason that this rule should be different under strict liability than it is under negligence theory merely because the need to prove negligence is removed in strict liability cases. *Accord Fireman's Fund Am. Ins. Cos. v. Burns Elec. Sec. Servs.*, 93 Ill.App. 3d 298, 299, 48 Ill.Dec. 729, 731, 417 N.E.2d 131, 133 (1981) (purely economic loss resulting from negligence not recoverable in tort; no reason for permitting recovery for loss of the same character in tort without fault). *Contra Mead Corp. v. Allendale*, 465 F.Supp. 355, 367 (N.D.Ohio 1979) (economic loss is recoverable in strict tort liability in Ohio).[1]

We noted in *Van Wyk v. Norden Laboratories, Inc.*, 345 N.W.2d 81, 88 (Iowa 1984), that we had not previously ruled on the specific question of strict liability recovery for purely economic injuries. Facing this issue squarely, we now hold, in agreement with the court of appeals, that purely economic injuries without accompanying physical injury to the user or consumer or to the user or consumer's property is not recoverable under strict liability.

B. *"Physical harm" under section 402A.* While our conclusion that purely economic harm is not recoverable under strict tort liability follows easily from our past decisions, our answer to the Nelsons' alternative contention is not so easily reached. Nelsons argue that Todd's Quick Cure caused physical harm to their property by allowing bacteria to destroy their specialty meat before retail sale. Therefore, they argue, their economic losses are consequential damages flowing from the harm to their property.

Nelsons' argument presents a difficult quandary. Certainly, their meat suffered harm of a physical nature which would have been prevented had the Quick Cure not been defective. This harm, however, was not a result of anything hazardous or dangerous about Quick Cure. The harm occurred not because Quick Cure damaged the meat in some active way, but because it failed to work at all. Does this harm justify liability under section 402A, as Nelsons claim, or is this harm no more than the foreseeable consequence of Quick Cure's failure to work properly, a harm to be addressed by warranty rules rather than strict liability rules, as Todd's asserts?

Courts facing similar questions have traveled a tortuous path. The underlying consideration in each decision, whether or not expressly articulated, has been how the harm in question relates to the differing policies behind tort law and contract law.

■ Few courts have squarely faced the question presented to us here: whether strict tort liability is applicable when a manufacturer produces a product designed to prevent harm to a purchaser's property, and the product fails to work resulting in the very harm sought to be prevented.

---

1. *See also Schiavone Const. Co. v. Elgood Mayo Corp.*, 81 A.D.2d 221, 227, 439 N.Y.S.2d 933, 937 (1981), *rev'd for the reasons stated in dissenting opinion, Silverman, J.*, 56 N.Y.2d 667, 451 N.Y.S. 2d 720, 436 N.E.2d 1322 (1982). The dissenting opinion which prevailed on further appeal in that case contrasted the leading case permitting purely economic causes of action in strict tort liability, *Santor v. A & M Karagheusian, Inc.*, 44 N.J. 52, 207 A.2d 305 (1965), with the much more widely accepted view adopted by the Supreme Court of California in *Seely v. White Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1966), that purely economic losses are not recoverable. We cited the decision of the California Supreme Court in *Seely* with approval in *Hawkeye Security Insurance Co. v. Ford Motor Co.*, 199 N.W.2d 373 (Iowa 1972) (*Hawkeye II*). Citing Justice Traynor's discussion on the conflict between warranty and strict liability theories in certain fact settings, we stated:

> [W]hen the loss is purely property, [Justice Traynor] did not rule out the use of strict tort, but when the loss is economic, such as loss of profit, loss of bargain, loss of business, etc., then the right of recovery must be governed by the warranty approach.

199 N.W.2d at 382.

Two cases which have addressed this question involved burglar alarm systems which failed to work during a burglary as warranted. *See Lobianco v. Property Protection Inc.*, 292 Pa.Super. 346, 437 A.2d 417 (1981); *Fireman's Fund Am. Ins. Cos. v. Burns Elec. Sec. Serv.*, 93 Ill.App. 3d 298, 48 Ill.Dec. 729, 417 N.E.2d 131 (1980). In both cases, the warranty coverage fell well short of the value of jewelry stolen and the plaintiffs tried to recover the difference by asserting a strict liability claim against the manufacturer.

The *Fireman's* decision focused upon the nature of the loss in "relation to what the product was supposed to accomplish." *Id.* at 300, 48 Ill.Dec. at 731, 417 N.E.2d at 133. Characterizing the jewelry loss as "economic" for strict tort liability purposes, the court stated:

We see no reason to make the presence or absence of physical harm the determining factor; the distinguishing central feature of economic loss is not its purely physical characteristic, but its relation to what the product was supposed to accomplish. For example, if a fire alarm fails to work and a building burns down, that is "economic loss" even though the building was physically harmed; but if the fire is caused by a short circuit in the fire alarm itself, that is not economic loss.

*Id.*

The essence of this statement is that some losses are encompassed by contract law principles and others by tort law principles. As the *Fireman's* court explained further concerning the plaintiff's loss and the defective burglar alarm:

[T]hat type of loss is removed from the field of tort liability. When goods are sold, their soundness is the core of the bargain. It is for the parties to decide what the consequences will be if the bargain founders. An entire body of law, contracts—of which product warranties is a part—is available to govern those areas of the relationship concerning which the bargain is silent.

\* \* \* \* \* \*

When a buyer loses the benefit of his bargain because the goods are defective ... he has his contract to look to for remedies. Tort law need not, and should not, enter the picture.

*Id.* at 301, 48 Ill.Dec. at 731–32, 417 N.E.2d at 133–34.

A concurring opinion in *Lobianco* [2] agreed with the *Fireman's* majority, but added that the prevailing interpretation of "defect" in tort law is "that the product does not meet the reasonable expectations of the ordinary consumer as to its safety." *Lobianco*, 292 Pa.Super. at 364, 437 A.2d at 426 (quoting Prosser, *Law of Torts*, 659 (4th Ed.1971)). Characterizing the plaintiff's loss, the concurring judge wrote:

The malfunction of the burglar alarm in this case did not render the alarm *unsafe*, although it certainly made it ineffective. The loss suffered by appellant was not physical injury resulting from an unsafe product, but rather, the foreseeable consequence of a malfunctioning burglar alarm.

*Id.*

We agree with both the majority in *Fireman's* and the concurrence in *Lobianco*. In characterizing the loss to Nelsons' meat we seek to determine whether contract law or tort law is best suited to the nature of the loss claimed, focusing particularly on anything dangerous to the user in the nature of the defect. Explaining this inquiry in a similar context, the third circuit court of appeals stated:

The line between tort and contract must be drawn by analyzing interrelated factors such as the nature of the defect, the type of risk, and the manner in which the injury arose. These factors bear directly on whether the safety-insurance policy of tort law or the expectation-bar-

---

**2.** The *Lobianco* decision was a plurality opinion. One faction of the court found that the loss of the jewelry was "physical harm" under Restatement (Second) on Torts § 402A, but held against the plaintiff because tort law is meant to protect defenseless parties. The plaintiff was not defenseless, they reasoned, because she could have purchased theft insurance to guard against losses above the warranty limit. 292 Pa.Super. at 360, 437 A.2d at 424.

gain protection policy of warranty law is most applicable to a particular claim. *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1173 (3rd Cir.1981).

We agree that the line to be drawn is one between tort and contract rather than between physical harm and economic loss. As we draw that line, the harm to Nelsons' meat falls on the contract-warranty side. The damage was the foreseeable result from a failure of the product to work properly because of a defect or omission from the product. When, as here, the loss relates to a consumer or user's disappointed expectations due to deterioration, internal breakdown or non-accidental cause, the remedy lies in contract. *See Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 84, 61 Ill.Dec. 746, 763, 435 N.E.2d 443, 450 (1982).

Tort theory, on the other hand, is generally appropriate when the harm is a sudden or dangerous occurrence, frequently involving some violence or collision with external objects, resulting from a genuine hazard in the nature of the product defect. For example, had Quick Cure caused chemical burns to the Nelsons' hands or damaged their meat processing equipment, an action would lie in strict tort liability. That sort of harm could not have been reasonably anticipated by the contracting parties, and would be a hazard peripheral to the sale.

Few cases will sufficiently involve the theories of breach of warranty and strict liability to warrant presenting both theories to a jury. *Hawkeye Sec. Ins. Co. v. Ford Motor Co.*, 199 N.W.2d 373, 381 (Iowa 1972). That situation did not exist here. We conclude the strict liability instruction and theory should not have been submitted to the jury. *Cf. National Can Corp. v. Whittaker Corp.*, 505 F.Supp. 147 (N.D.Ill.1981) (bottler sued manufacturer of gaskets or seals inside soft drink bottle caps which decomposed into fluid in bottles; despite fact company destroyed substantial quantity of bottles returned by customers, court held strict tort liability theory inapplicable).

III.   *Other issues.*   In their application for further review, Nelsons did not challenge the handling by the court of appeals of the other issues raised by Todd's appeal.

Although Todd's did not file an application for further review, it invites us to review other issues in the appeal. We agree with the court of appeals that plaintiffs' claim for express warranty was properly submissible to the jury under this record. Other issues involve damages, the sufficiency of evidence to support these damage submissions, and award of interest. As did the court of appeals, we decline to address those issues as the evidence and rulings upon retrial may be different from the present record.

■ IV.   *Disposition.*   We affirm the court of appeals decision that purely economic damages, as claimed here, are not recoverable under strict liability theory absent physical harm to the plaintiffs' person or property of the type we conclude is necessary in division II. The verdict form submitted to the jury only asked it to decide if the product Quick Cure was defective, and if so, to determine the amount of damages. Because the damages arrived at by the jury may have been based upon the strict liability instruction, the error in submitting that issue requires reversal. The judgment of the trial court is reversed and the case is remanded for a new trial on the express warranty theory.

DECISION OF COURT OF APPEALS AFFIRMED; JUDGMENT OF DISTRICT COURT REVERSED AND REMANDED.