Norman **BRAMAN** and Edward R. Leibowitz, **individually and d/b/a Braman–Leibowitz Associates No. 2, a general partnership organized under the laws of Florida, Plaintiffs,**

v.

**WOODFIELD GARDENS ASSOCIATES, REALCORP INVESTORS I, Realcorp Investors VII, Realcorp, Inc., Allen Perres, William E. Dec, and Edward F. Niziol, Defendants.**

**No. 88 C 9116.**

United States District Court, N.D. Illinois, E.D.

June 29, 1989.

Laurence H. Lenz, Jr., Michael McGreal, Katten Muchin & Zavis, Chicago, Ill., for plaintiffs.

Stephen Novack, Bruce Braverman, Novack and Macy, Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

Realcorp, Inc. ("Realcorp"), an Illinois corporation, specializes in forming limited partnerships for the purpose of investing in or acquiring residential properties. Realcorp then sells interests in the partnerships it creates. In late 1984, Realcorp's officers—Allen Perres, William Dec, and Edward Niziol—organized a partnership called Woodfield Gardens Associates ("Woodfield Gardens"), which acquired and operated an apartment complex in Rolling Meadows, Illinois. Realcorp then offered to sell an interest in Woodfield Gardens to Braman–Leibowitz Associates No. 2 ("Braman–Leibowitz"), a Florida partnership. Norman Braman and Edward Leibowitz, the general partners of Braman–Leibowitz, initially balked at Realcorp's proposal. Neither Braman nor Leibowitz had seen

the apartment complex that Woodfield Gardens had acquired. In order to induce Braman–Leibowitz to invest immediately in Woodfield Gardens, Realcorp's officers allegedly made an oral promise to buy back any units purchased by Braman–Leibowitz if representatives of the Florida partnership subsequently inspected the Woodfield Gardens property and determined that the investment was undesirable. Based on this inducement, Braman and Leibowitz agreed to purchase ten units in Woodfield Gardens without having seen the property. To obtain financing for this purchase, Braman–Leibowitz executed a secured recourse note in favor of Woodfield Gardens.

In May 1985, relying on the promise previously made by Realcorp's officers, Braman–Leibowitz asked Realcorp to repurchase eight of the Florida partnership's ten units in Woodfield Gardens. At this point, representatives of Realcorp and Braman–Leibowitz conducted several months of negotiations concerning the terms of the repurchase. In the meantime, Perres, Dec, and Niziol organized two new partnerships: Realcorp Investors I ("Investors I") and Realcorp Investors VII ("Investors VII"). On February 1, 1986, representatives of Braman–Leibowitz and Investors VII entered into a sale agreement. This agreement provided that Braman–Leibowitz would convey eight units in Woodfield Gardens to Investors VII. In exchange, Investors VII agreed to assume liability on the secured recourse note executed by Braman–Leibowitz. Alternatively, Investors VII promised to find substitute investors who would take responsibility for the note.

In compliance with the sale agreement, Braman–Leibowitz transferred eight units in Woodfield Gardens to Investors VII. According to Braman and Leibowitz, however, Investors VII has neither assumed liability on the secured recourse note nor found substitute investors who might purchase the note. Claiming that they never received compensation for the partnership units they conveyed to Investors VII, Braman and Leibowitz filed this lawsuit. Their four-count amended complaint names seven defendants: Realcorp, Woodfield Gardens, Investors I, Investors VII,

Perres, Dec, and Niziol. In response, defendants have moved to dismiss most of plaintiffs' claims. Defendants have also moved to strike certain allegations made in the complaint. The court will now assess the merits of defendants' motions.

I. Motion to Dismiss

A. Count I—Breach of Contract

■ Count I of plaintiffs' complaint alleges a breach of contract by all seven defendants. Although the complaint alludes to several "agreements," only one of these accords—the February 1986 sale agreement—could conceivably have created contractual obligations. Obviously, if the sale agreement represents a valid contract, then its terms would bind Investors VII, which agreed to purchase eight units in Woodfield Gardens from Braman–Leibowitz. The sale agreement would also bind Perres, Dec, and Niziol, the individual partners who formed Investors VII. General partners assume ultimate liability for the unsatisfied debts of a partnership. *Lyons Savings and Loan Association v. Geode Co.*, 641 F.Supp. 1313, 1324 n. 6 (N.D.Ill. 1986); *Grass v. Homann*, 130 Ill.App.3d 874, 881, 85 Ill.Dec. 751, 756, 474 N.E.2d 711, 716 (1984). Defendants contend, however, that plaintiffs cannot assert a contract claim against Realcorp, Woodfield Gardens, and Investors I. This court agrees. To state a claim for breach of contract, plaintiffs must establish privity of contract with defendants: "Privity requires that the party suing has some contractual relationship with the one sued." *Crest Container Corp. v. R.H. Bishop Co.*, 111 Ill.App.3d 1068, 1076, 67 Ill.Dec. 727, 733, 445 N.E.2d 19, 25 (1982). Although Realcorp may have participated in negotiations regarding the repurchase of plaintiffs' units in Woodfield Gardens, neither Realcorp, Woodfield Gardens, nor Investors I entered into the February 1986 sale agreement with Braman–Leibowitz. Therefore, of the seven defendants, only Investors VII and its partners could possibly incur contractual liability. For this reason, the court dismisses Realcorp, Woodfield Gardens, and Investors VII from Count I.

### B. Count II—Unjust Enrichment

Count II asserts a claim for unjust enrichment. As defendants correctly observe, plaintiffs may not prevail on an unjust enrichment claim if a contract governs the relationship between the parties. *See First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir.1985). Based on this principle, defendants argue that the allegation of a breach of contract in Count I precludes plaintiffs from raising an unjust enrichment claim in Count II. The Federal Rules of Civil Procedure, however, undermine defendants' argument for dismissal of Count II. Rule 8(e)(2) provides that "a party may set forth two or more statements of a claim ... alternately or hypothetically, either in one count ... or in separate counts.... A party may also state as many separate claims ... as the party has regardless of consistency ..." Fed.R.Civ.P. 8(e)(2). Under Rule 8(e)(2), plaintiffs may raise alternative claims of breach of contract and unjust enrichment despite the inconsistency of these claims. *See McIntosh v. Magna Systems, Inc.*, 539 F.Supp. 1185, 1190–91 (N.D.Ill.1982). Consequently, this court declines to dismiss Count II. Nonetheless, the court recognizes that plaintiffs cannot maintain an unjust enrichment claim against all seven defendants. To recover under an unjust enrichment theory, plaintiffs must show that defendants "voluntarily accepted a benefit which it would be inequitable for [them] to retain without payment." *Premier Electrical Construction Co. v. LaSalle National Bank*, 132 Ill.App.3d 485, 496, 87 Ill.Dec. 721, 729, 477 N.E.2d 1249, 1257 (1984). Of the seven defendants, only Investors VII and its partners voluntarily accepted a benefit from Braman–Leibowitz. Therefore, the court must dismiss Realcorp, Woodfield Gardens, and Investors I from Count II.

### C. Count III—Conversion

Count III asserts that defendants knowingly and willfully converted plaintiffs' property. Although plaintiffs attempt to state a tort claim for conversion, they are essentially seeking compensation for an economic loss. The Illinois courts have concluded that economic losses are not recoverable in tort. *See, e.g., National Can Corp. v. Whittaker Corp.*, 505 F.Supp. 147, 149–50 (N.D.Ill.1981); *Fireman's Fund American Insurance Cos. v. Burns Electronic Security Services, Inc.*, 93 Ill.App.3d 298, 300-01, 48 Ill.Dec. 729, 731–32, 417 N.E.2d 131, 133–34 (1980). The *Fireman's Fund* court equated economic loss with the loss of the benefit of a bargain. *Fireman's Fund*, 93 Ill.App.3d at 300, 48 Ill.Dec. at 731, 417 N.E.2d at 133. In the instant case, plaintiffs claim that they never received the benefit of their bargain with defendants. Plaintiffs assert that defendants owe money to Braman–Leibowitz. To state a claim for conversion, however, plaintiffs must do more than allege that defendants had a "mere obligation to pay money." *Mijatovich v. Columbia Savings and Loan Association*, 168 Ill.App.3d 313, 316, 119 Ill.Dec. 66, 69, 522 N.E.2d 728, 731 (1988). Plaintiffs point out that they are also seeking the return of the partnership units they conveyed to Investors VII. Nonetheless, plaintiffs' pursuit of this alternative remedy does not salvage their conversion claim. By requesting the return of their partnership units in Woodfield Gardens, plaintiffs are merely seeking restitution, a contractual remedy for an economic loss. Because plaintiffs' alleged injuries amount to nothing more than economic loss, plaintiffs cannot assert a tort claim for conversion.

### D. Count IV—Indemnification

In Count IV, plaintiffs claim that defendants must indemnify Braman–Leibowitz for all sums paid under the secured recourse note. Plaintiffs concede that they did not enter into an express indemnity contract with defendants. Nonetheless, plaintiffs maintain that the relationship between Braman–Leibowitz and defendants created an implied indemnification agreement. The concept of implied indemnity finds some support in the common law: "Indemnity derives from principles of contract, and may be express or implied. Implied indemnity traditionally requires a pretort relationship which gives rise to a duty

to indemnify." *Davis v. FMC Corp.*, 537 F.Supp. 466, 467 (C.D.Ill.1982). In the instant case, however, the relationship between the parties does not implicate a duty to indemnify. Assuming that the February 1986 sale agreement governs the parties' relationship, the terms of that agreement do not permit the court to imply indemnity. By its own express terms, the sale agreement represents the "total agreement" between Braman–Leibowitz and Investors VII concerning the Woodfield Gardens transaction. Even if the sale agreement does not control the parties' relationship, plaintiffs have not alleged sufficient facts to warrant the conclusion that their dealings with defendants created an implied duty to indemnify. Consequently, plaintiffs have failed to state a claim for indemnification.

## II. Motion to Strike Certain Allegations

■ Defendants also move to strike certain allegations made in plaintiffs' complaint. Specifically, defendants object to paragraphs 18 and 19 of the complaint. These paragraphs contain allegations about the repurchase negotiations between Braman–Leibowitz and Realcorp. Additionally, defendants move to strike Exhibit C to the complaint, an August 1985 letter that proposes a settlement of the parties' repurchase dispute.

Plaintiffs contend that paragraphs 18 and 19 and Exhibit C allege the actual existence of a settlement. On the contrary, the allegations challenged by defendants involve settlement negotiations that took place before the parties reached a compromise. Pursuant to Fed.R.Evid. 408, such compromise negotiations are inadmissible to prove defendants' liability. Plaintiffs argue that the court should not strike the allegations concerning the settlement negotiations because these allegations include defendants' admission of an obligation to repurchase plaintiffs' units. This argument ignores the plain language of Rule 408: "Evidence of conduct or statements made in compromise negotiations is likewise not admissible." Fed.R.Evid. 408. By admitting such statements in the instant case, this court would undermine the purpose of Rule 408: "to encourage settlements. The fear is that settlement negotiations will be inhibited if the parties know that their statements may later be used as admissions of liability." *Central Soya Co. v. Epstein Fisheries, Inc.*, 676 F.2d 939, 944 (7th Cir.1982). Therefore, based on Rule 408 and the considerations underlying its adoption, the court grants defendants' motion to strike pursuant to Fed.R.Civ.P. 12(f).

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted in part. The court dismisses Realcorp, Woodfield Gardens, and Investors I from Counts I and II. The court also dismisses Counts III and IV. Nonetheless, the court denies defendants' motion to dismiss Count II. Finally, the court grants defendants' motion to strike paragraphs 18 and 19 and Exhibit C from plaintiffs' complaint.

IT IS SO ORDERED.