Victor C. TOMKA, Appellant,

v.

**HOECHST CELANESE CORP. d/b/a Hoechst–Roussel Agri–Vet Co., Appellee.**

No. 93–869.

Supreme Court of Iowa.

Feb. 22, 1995.

Robert Kohorst of the Kohorst Law Firm, Harlan, for appellant.

Roland D. Peddicord and Joseph M. Barron of Peddicord, Wharton, Thune & Spencer, Des Moines, for appellee.

Considered by HARRIS, P.J., and LARSON, LAVORATO, ANDREASEN, and TERNUS, JJ.

TERNUS, Justice.

Plaintiff, Victor Tomka, sued defendant, Hoechst Celanese Corporation d/b/a Hoechst–Roussel Agri–Vet Co., a manufacturer of synthetic growth hormones. Tomka sought to recover damages he sustained when cattle he was custom feeding were implanted with a hormone manufactured by Hoechst.

The trial court granted Hoechst's motion for directed verdict and the court of appeals affirmed. Both the trial court and the court of appeals held that Tomka could not recover economic losses in the absence of any damage to his property. Because Tomka did not own the cattle that were implanted, both courts concluded that Tomka did not suffer any property damage and so could not maintain his case. We affirm because we agree

Hoechst was entitled to a directed verdict for reasons we discuss below.

Tomka also appeals from the trial court's denial of his motion for leave to amend. The court of appeals affirmed this ruling and so do we.

I. *Background Facts and Proceedings.*

Tomka had a custom cattle feeding operation. In 1988 and 1989, he contracted with Bob Brummer to feed cattle owned by Brummer. Pursuant to these contracts, Brummer delivered heifers owned by Brummer to Tomka's facilities. Tomka agreed to feed the cattle until they reached market weight. At that time Brummer would presumably sell the cattle. Brummer promised to pay Tomka forty cents per pound for the first 300 pounds of weight gained and fifty cents per pound of weight gained after that.

Brummer wanted the cattle implanted with Synovex and Finaplix, two synthetic growth hormones. Tomka arranged for the implants to be done by local veterinarians. These veterinarians implanted the hormones and billed Brummer for the cost of the hormones and the charge for implanting them. Finaplix is manufactured by Hoechst.

Tomka testified that the cattle became restless several days after the implants and exhibited bullish behavior. He claims they did not gain weight as they should have and consequently the cattle were sold later than he expected. As a result, he lost money on his contracts with Brummer.

Tomka sued several parties but only Hoechst remained as a defendant at the time of trial. Tomka relied on theories of breach of express warranty, breach of the implied warranties of merchantability and fitness for a particular purpose, negligence and strict products liability.

Tomka's expert witness testified that implanting both Synovex and Finaplix overdosed the cattle on male hormones, causing aggressive behavior. He said that animals receiving the dual implants would be in good clinical health but would not gain much weight. In his opinion, Hoechst should have warned against the usage of Finaplix in combination with other male hormones.

At the close of Tomka's case, the trial court sustained Hoechst's motion for a directed verdict. Simultaneously, Tomka sought leave to amend his petition to add claims of intentional tort and gross negligence. These new claims were based on Hoechst's alleged violation of a federal regulation by indirectly promoting the use of Finaplix in combination with other implants. The trial court denied this motion, concluding in part that Hoechst had no notice of these theories and they were not tried by consent.

## II. Scope of Review of Directed Verdict.

We review the court's grant of a motion for directed verdict for correction of errors of law. *Spaur v. Owens–Corning Fiberglas Corp.*, 510 N.W.2d 854, 858 (Iowa 1994). We must decide whether the trial court correctly determined that there was insufficient evidence to submit the case to the jury. *Smith v. Smithway Motor Xpress, Inc.*, 464 N.W.2d 682, 684 (Iowa 1990). In making this decision, we view the evidence in the light most favorable to the nonmoving party. *Spaur*, 510 N.W.2d at 858.

## III. Motion for Directed Verdict on Tort Theories.

The trial court granted Hoechst's motion for directed verdict on the strict liability and negligence theories on the basis that Tomka sought to recover solely economic losses. The court relied on the principle of law that a plaintiff may not recover economic losses under strict liability or negligence theories if the plaintiff's property or person has not sustained damage. *See Nelson v. Todd's Ltd.*, 426 N.W.2d 120, 123 (Iowa 1988) ("purely economic injuries without accompanying physical injury to the user or consumer or to the user or consumer's property are not recoverable under strict liability"); *Nebraska Innkeepers, Inc. v. Pittsburgh–Des Moines Corp.*, 345 N.W.2d 124, 126 (Iowa 1984) ("a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable"). Tomka argues for the

first time on appeal that he had a property interest in the cattle as a bailee. Therefore, he concludes, he suffered physical injury to his property, the cattle, in addition to the economic losses he sustained.

We need not address the bailment issue because we believe that the directed verdict was properly granted even if Tomka had a property interest in the cattle. Although Tomka argues that the cattle were damaged, the evidence showed that the cattle merely gained weight at a slower pace than one would expect of cattle injected with a growth hormone. In fact, Tomka's own expert testified that cattle given dual implants were in good clinical health.[1]

We think Tomka's damages fall squarely within the holding of our *Nelson* case. In *Nelson* a curing agent for meat purchased by the plaintiffs failed to work. *Nelson*, 426 N.W.2d at 121. Consequently, substantial quantities of meat sold by the plaintiffs spoiled and were returned by their customers. *Id.* The plaintiffs sought recovery from the manufacturer of the curing agent under theories of strict liability and breach of express warranty. *Id.* The trial court submitted both theories to the jury which returned a verdict in plaintiffs' favor. *Id.*

On appeal, we held that the trial court erred in submitting both theories to the jury. *Id.* at 125. In analyzing whether contract law or tort law applied, we focused not on the presence or absence of physical harm but on whether the defect in the product was dangerous to the user. *Id.* at 122–25. We quoted with approval from an Illinois case:

"We see no reason to make the presence or absence of physical harm the determining factor; the distinguishing central feature of economic loss is not its purely physical characteristic, but its relation to what the product was supposed to accomplish. For example, if a fire alarm fails to work and a building burns down, that is 'economic loss' even though the building was physically harmed; but if the fire is caused by a short circuit in the fire alarm itself, that is not economic loss."

---

1. Tomka testified that some of the cattle died. His expert testified that autopsies on the cattle showed they died from heat stress. Neither the expert nor any other witness testified that Hoechst's hormone was the cause of the cattle's death.

*Id.* at 124 (quoting *Fireman's Fund Am. Ins. Cos. v. Burns Elec. Security Serv.*, 93 Ill. App.3d 298, 48 Ill.Dec. 729, 731, 417 N.E.2d 131, 133 (1981)). In other words, contract law protects a purchaser's expectation interest that the product received will be fit for its intended use. *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 751, 435 N.E.2d 443, 448 (1982); *Northridge Co. v. W.R. Grace & Co.*, 162 Wis.2d 918, 471 N.W.2d 179, 185 (1991). The essence of products liability law is that the plaintiff has been exposed, through a dangerous product, to a risk of injury to his person or property. *Moorman Mfg. Co.*, 435 N.E.2d at 448; *Northridge Co.*, 471 N.W.2d at 185. As the Wisconsin Supreme Court summarized, "defects of suitability and quality are redressed through contract actions and safety hazards through tort actions." *Northridge Co.*, 471 N.W.2d at 185.

We think the damage sustained by Tomka here clearly falls within contract-warranty theories, not tort theories. As Tomka's own attorney said, "[T]his product is designed here to promote growth in cattle and yet we are alleging that the product failed to do that." Tort law does not encompass this type of damage and therefore, the trial court properly directed a verdict on Tomka's strict liability and negligence theories.[2] *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 808 P.2d 851, 864 (1991) (court affirmed dismissal of negligent misrepresentation claim alleging that manufacturer failed to disclose that irrigation system could not meet plaintiff's needs, holding that remedy for purely economic damages falls within implied warranty, not tort).

#### IV. *Motion for Directed Verdict on Warranty Theories.*

Hoechst challenged Tomka's ability to recover under warranty theories on several bases. Among Hoechst's arguments were (1) Tomka was not the "buyer" of the implant,

and (2) Tomka could not recover because he sustained only economic losses and no physical damage to his property. Tomka took the position that he was the "functioning purchaser" and therefore entitled to rely on warranty theories of recovery. We conclude that even if Tomka can be considered the buyer of the hormones, he is still not entitled to recover from Hoechst—a remote seller—because he sustained only economic loss damages.

■ A. *Breach of express warranty.* We have recently held that non-privity buyers cannot recover consequential economic loss damages under a theory of express warranty. *Beyond the Garden Gate, Inc. v. Northstar Freeze-Dry Mfg., Inc.*, 526 N.W.2d 305, 309–10 (Iowa 1995). This rule bars any recovery by Tomka under his express warranty theory.

■ Whether a party is "in privity" with another party depends on whether they are parties to a contract. If the parties have contracted with each other, they are in privity. 1 James J. White & Robert S. Summers, *Uniform Commercial Code* § 11-2, at 528 (3d ed.1988) (hereinafter "White and Summers"). If they have not, they are not in privity. *Id.* White and Summers gives an example of a non-privity plaintiff as one who purchases a product but does not buy it directly from the defendant. *Id.*

That is the situation we have here. Even if Tomka can be considered a buyer, he did not buy the product from the defendant manufacturer. He purchased Finaplix from the veterinarians. Therefore, Tomka was not in privity with Hoechst.

Additionally, the damages that Tomka seeks to recover are consequential economic loss damages. As we explained in *Beyond the Garden Gate*, "direct economic loss" damage is "'the difference between the actual value of the goods accepted and the value they would have had if they had been as

---

**2.** After the trial court had ruled on Hoechst's motion for directed verdict, Tomka argued for the first time that he had suffered damage to his good will. He claimed that this harm constituted property damage and therefore, he did not seek recovery solely for economic losses. We disagree. For purposes of warranty and tort

analysis, loss of good will is an economic loss. *Beyond the Garden Gate, Inc. v. Northstar Freeze-Dry Mfg., Inc.*, 526 N.W.2d 305 (Iowa 1995). *See generally* 1 James J. White & Robert S. Summers, *Uniform Commercial Code* § 11-6, at 539 (3d ed.1988).

warranted.'" *Beyond the Garden Gate, Inc.,* 526 N.W.2d at 309 (quoting White and Summers at 536). "Consequential economic loss" includes "'loss of profits resulting from the failure of the goods to function as warranted, loss of goodwill, and loss of business reputation.'" *Id.* Tomka seeks damages for lost profits and loss of good will. Therefore, his damages are consequential economic loss.

Because Tomka is at best a non-privity buyer and because he seeks to recover only consequential economic loss damages, he may not rely on a theory of breach of express warranty. *Id.* at 310. The trial court correctly directed a verdict for the defendant on this theory of liability.

■■■ B. *Implied warranties of merchantability and fitness for a particular purpose.* Under Iowa law a warranty that goods sold are merchantable is implied in a contract for their sale. Iowa Code § 554.2314 (1993). Additionally, if the seller has reason to know at the time of contracting that the buyer is purchasing the goods for a particular purpose and that the buyer is relying on the seller's skill and judgment to furnish suitable goods, there arises a warranty that the goods shall be fit for that purpose. *Id.* § 554.2315. We have never allowed recovery for solely consequential economic losses under these implied warranty theories by one not in privity with the defendant. We decline to do so now.

The same reasons we found persuasive in *Beyond the Garden Gate* to disallow recovery under an express warranty theory apply here. In addition, an extension of implied warranty theories to non-privity buyers would seriously hamper the ability of remote sellers to disclaim warranties as allowed by the Uniform Commercial Code. *See Professional Lens Plan, Inc. v. Polaris Leasing Corp.,* 234 Kan. 742, 675 P.2d 887, 898 (1984) (extension of implied warranties to remote manufacturers would spawn numerous problems in the operation of the Uniform Commercial Code). We should not lightly undermine the legislative scheme for governance of commercial transactions. *See Szajna v. General Motors Co.,* 115 Ill.2d 294, 104 Ill.Dec. 898, 905, 503 N.E.2d 760, 767 (1986) (refusing to extend implied warranties to remote buyer

seeking economic loss damages as such would be judicial legislation).

■■■ In summary, we hold that a purchaser may not maintain a suit for breach of implied warranties by a remote manufacturer where the only damages sought are for consequential economic loss. *Rhodes v. General Motors Corp.,* 621 So.2d 945, 947 (Ala.1993); *Prairie Prod., Inc. v. Agchem Division–Pennwalt Corp.,* 514 N.E.2d 1299, 1301–02 (Ind.Ct.App.1987); *Professional Lens Plan, Inc.,* 675 P.2d at 898–99; *Arell's Fine Jewelers, Inc. v. Honeywell, Inc.,* 170 A.D.2d 1013, 566 N.Y.S.2d 505, 507 (1991). We note that a purchaser such as Tomka is not left without a remedy. He bought the hormones from local veterinarians and he may look to them for recovery under warranty theories.

## V. *Motion for Leave to Amend.*

■■■ After Hoechst made its motion for a directed verdict, Tomka sought leave to amend his petition to add theories of intentional tort and gross negligence based on Hoechst's alleged indirect promotion of dual implants in violation of a federal regulation. The trial court denied Tomka's motion.

■■■■ We will reverse the trial court's refusal to allow an amendment of the petition only upon a showing of a clear abuse of discretion. *Porter v. Good Eavespouting,* 505 N.W.2d 178, 180 (Iowa 1993). Leave to amend pleadings should be freely given. *Id.* However, an amendment to conform to the proof should not be allowed if it will substantially change the claim. *W & W Livestock Enters., Inc. v. Dennler,* 179 N.W.2d 484, 488 (Iowa 1970).

We agree with the trial court that the amendment Tomka sought to make would have substantially changed the plaintiff's claims against the defendant midway through the trial. We also agree that the admission of evidence of indirect promotion of dual implants without objection by Hoechst does not show Hoechst's consent to these new theories of recovery because this evidence was arguably relevant to Tomka's warranty claims. We conclude the trial court did not abuse its discretion in refusing to allow Tom-

ka to amend his petition to conform to the proof.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**