**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**
No. 96-1794/1795

| | | |
|---|---|---|
| National Liberty Corporation; Worldwide Underwriters Insurance Company, | * * * * | |
| Appellants/Cross Appellees, | * * | |
| v. | * * | Appeal and Cross-Appeal from the United States District Court for the |
| Wal-Mart Stores, Inc., doing business as Sam's Club; Sedgwick James of Arkansas, Inc., | * * * * | Eastern District of Missouri. |
| Defendants, | * * | |
| Sedgwick James Group Service, Inc., | * * | |
| Appellee/Cross Appellant. | * | |

_____

Submitted: January 15, 1997
Filed: August 13, 1997

_____

Before BEAM, ROSS and HANSEN, Circuit Judges.

_____

ROSS, Circuit Judge.

National Liberty Corporation and Worldwide Underwriters Insurance Company (collectively referred to as National Liberty) appeal from the district court's[1] denial of their Fed. R. Civ. P. 50(b) motions for judgment as a matter of law or alternatively for a new trial on the counterclaim of Sedgwick James Group Service, Inc. (SJGS), for which the jury awarded SJGS $202,023 in damages.  SJGS's counterclaim was a single cause of action for breach of contract based on a contract originally entered into between National Liberty and Sedgwick James of Arkansas, Inc. (SJA).  In its motion for Rule 50(b) relief, National Liberty argued that SJGS failed to establish privity of contract between the parties, whereas no evidence was offered to show that SJGS had satisfied the contractual requirement that written consent was needed in order to effectuate an assignment.  National Liberty also asserts that even if SJGS had a right to sue under the contract, the amount of the allowable recovery is limited by the terms of the contract and precludes the type of damages awarded by the jury.  SJGS cross appeals on the district court's denial of its untimely motion to amend its counterclaim to assert a claim for attorney's fees.  After a careful review of the record, briefs and arguments of the parties, we affirm in full.

## I.

National Liberty, a company engaged in direct-mail marketing and sales of insurance policies, entered into a contract entitled the "referral agreement" with SJA, which called for the two companies to work together on a plan to market National Liberty's insurance products to Sam's Club members. SJA, broker of record for Sam's Club, acted as intermediary between National Liberty and Sam's Club via an entity known as Members Insurance Club (MIC).  Through MIC, National Liberty began offering insurance to Sam's Club members.  Under the terms of the referral agreement,

---

[1]The Honorable Catherine D. Perry, United States District Court Judge for the Eastern District of Missouri.

SJA was to receive a 2.5% commission on premiums for insurance policies issued to and renewed by Sam's Club members.

In  December 1993, due to the loss of major corporate business, SJA was forced to close its Tulsa office, the same office that managed MIC.  Prior to the closing, SJA arranged for SJGS to assume its role in  marketing National Liberty insurance to Sam's Club members, and accordingly SJGS received a broker of record letter from Sam's Club, which allowed SJGS to contact all insurance carriers providing insurance to Sam's Club members through MIC.  According to SJGS, National Liberty was informed of the change and immediately began working with SJGS.

In February 1994, Sam's Club terminated the insurance program. As a result, National Liberty discontinued paying commissions to SJGS and brought a multi-count action against SJA, SJGS and Sam's Club. In response, SJGS brought  this counterclaim against National Liberty seeking payment of  commissions under the referral agreement.

A jury returned a verdict in favor of SJGS, SJA and Sam's Club on National Liberty's suit.  The jury also found in favor of SJGS on its counterclaim, concluding that National Liberty owed SJGS commissions on premiums received now and those to be collected from future renewals.  Thereafter, the district court denied National Liberty's Rule 50(b) motion for judgment as a matter of law or alternatively for a new trial on the counterclaim.

During the pendency of the trial, SJGS filed an untimely  motion for leave to file an amended counterclaim seeking attorney's fees provided for under the referral agreement, and prejudgment interest pursuant to Mo. Rev. Stat. § 408.020.  The district court refused to allow SJGS to file its amended counterclaim and later denied SJGS's post-trial motion to consider the issue of attorney's fees.

II.

National Liberty first asserts that the counterclaim should not have been submitted to the jury because SJGS failed to establish that it was a proper party to assert a breach of the referral agreement which had originally been entered into between National Liberty and SJA. SJGS argues, on the other hand, that by its actions, National Liberty consented to the assignment of the referral agreement to SJGS, thereby effectively waiving the contractual requirement that an assignment be made in writing.

Under Missouri law, waiver is the intentional relinquishment of a known right which may be implied from a party's conduct. To be so implied, the party's conduct must "be so manifestly consistent with and indicative of an intention to renounce a particular right or benefit that no other reasonable explanation of [the] conduct is possible." Silver Dollar City v. Kitsmiller Constr. Co., 931 S.W.2d 909, 916 (Mo. Ct. App. 1996) (citation omitted).

SJGS introduced evidence at trial that once it assumed SJA's role in marketing insurance to Sam's Club members, it promptly notified National Liberty by letter that SJGS had been appointed as Sam's agent and broker of record with respect to all Sam's Club members' insurance programs and that with the closing of the SJA office, all commissions, information, phone calls, etc. should be directed to SJGS. Linda Berger, senior account manager for National Liberty, acknowledged receipt of that letter, beginning with the salutation, "Welcome to the SAM's account!" Shortly thereafter, an introductory meeting between SJGS and National Liberty management was held. Ms. Burger testified at trial regarding her understanding that the SJA business would be transferred to SJGS and that the program would continue as it had been. She stated that "[t]hey [SJGS] were going to do the same things that [SJA] had done for us."

Also at trial, SJGS's expert, Bob Seiffert, testified that National Liberty sent commission checks to SJGS and agreed to reissue those checks payable to SJGS after SJGS complained that the payee had been incorrectly listed as SJA. Only after the program was canceled by Sam's Club did National Liberty refuse to make any further commission payments. However, National Liberty continued to keep a ledger of commissions owed but not paid to "Sedgwick James Group Ser."

Clearly, there was sufficient evidence presented at trial to submit the counterclaim to the jury and for the jury to conclude that SJGS had effectively stepped into SJA's shoes with respect to the referral agreement. Indeed, National Liberty read to the jury the following request for admission by National Liberty and SJGS's response to that admission:

> 21.  SJGS succeeded to and assumed the same rights, duties and obligations possessed by SJA in its relationship with plaintiffs with regard to the sales, marketing, and promotion of insurance to Sam's Club members.
>
> Response:  SJA and SJGS admit the request.

By its own actions, National Liberty exhibited its clear and unequivocal intention to accept SJGS's assignment and thereby waived its right under the agreement to require written consent to the assignment.

We also reject National Liberty's argument that the waiver and assignment arguments are raised for the first time on appeal and thus the issues were not before the trier of fact. On the contrary, the jury was specifically instructed that in order to find in favor of SJGS on its counterclaim it must determine that SJGS "assumed the rights

of [SJA] and [National Liberty] agreed to pay [SJGS] the commissions due under the referral agreement." Instruction No. 22. The jury clearly found in SJGS's favor on this point.

## III.

National Liberty next challenges the nature of the damages awarded to SJGS under the referral agreement. The jury awarded damages in the amount of $76,000 in past commissions and $117,000 in future commissions, based on a ten-year projection of renewals of policies sold before termination of the insurance program, discounted to present value. With interest, the total damages awarded to SJGS amounted to $202,023. National Liberty contends that the language of the referral agreement, which provides that National Liberty shall pay commissions on "all first year and renewal Net Collected Premium actually received," precludes the jury verdict of $117,000 awarded for the projected future commissions. According to National Liberty, the referral agreement, which calls for payment of commissions "within thirty (30) days of the end of the month in which [National Liberty] actually receives the premium," establishes a method of calculation and mode of payment that prohibits an award of damages based on premiums not yet received. We disagree.

An anticipatory repudiation by an obligor to a contract gives the obligee the right to treat the agreement as broken and to sue immediately for damages for a total breach of contract. Reed v. Reberry, 883 S.W.2d 59, 63, 64 (Mo. Ct. App. 1994). Under the terms of the agreement, SJGS was entitled to receive commissions on all "first year and renewal" premiums generated from the sale of insurance policies to

Sam's Club members. National Liberty unequivocally renunciated the referral agreement and its obligations thereunder when it refused to continue the payment of commissions. Accordingly, SJGS had the option to treat the contract as broken and to sue immediately for damages for total breach, including damages based on projected premium renewals. Once National Liberty repudiated the referral agreement, it waived its right to insist upon adherence to the mode of payment outlined in the agreement.

IV.

In its cross appeal, SJGS argues that the district court abused its discretion in denying its motion to amend its counterclaim seeking to assert a claim for attorney's fees under the terms of the referral agreement[2] and in denying its post-trial motion for attorney's fees. Attorney's fees are "special damages" that parties are required to plead under Rule 9(g) of the Federal Rules of Civil Procedure. See Western Cas. & Surety Co. v. Southwestern Bell Tel. Co., 396 F.2d 351, 356 (8th Cir. 1968). Failure to plead special damages can be cured by amendment of the pleadings, under Rule 15(a) of the Federal Rules of Civil Procedure, which provides that a party may amend a pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The decision to

---

[2]Paragraph 8 of the referral agreement provides:

8. Indemnification. The parties hereby agree to indemnify, release and hold the other parties hereto . . . harmless from and against any and all losses . . . including, but not limited to, reasonable attorney fees that such other parties may incur as a result of or relating to the indemnifying party's breach of this Agreement.

grant or deny a motion to amend a pleading is within the sound discretion of the district court. <u>Brown v. Wallace</u>, 957 F.2d 564, 565 (8th Cir. 1992). SJGS contends that in seeking to file its amended counterclaim, it was merely clarifying the damages it alleged it was entitled to under the referral agreement.

According to the district court's scheduling order, March 30, 1995 was the deadline for any amendments to the pleadings. SJGS filed its motion for leave to amend on June 23, 1995, almost three months after the court's deadline, without explanation for its untimeliness. The district court found that National Liberty would be prejudiced by the untimely amendment because it had already completed depositions of witnesses who were likely to have knowledge of such a claim, and adding the claim after the amendment deadline would have required retaking those depositions. We do not believe the finding of prejudice was clearly erroneous. The district court also denied the post-trial motion, concluding that SJGS had two opportunities to plead attorney's fees -- in the initial counterclaim and in a timely Rule 15 motion. SJGS failed to do so and has not asserted any reason for its failure. The court did not abuse its discretion in denying the motions relating to attorney's fees.

V.

In sum, we conclude that privity of contract was established and the counterclaim was properly before the jury; the damage award relating to commissions on future renewals was proper; and the court did not abuse its discretion in denying SJGS's motions regarding attorney's fees. The judgment of the district court is affirmed.

A true copy.

Attest:

       CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.