AUDIO ODYSSEY, LTD., Dogan
A. Dincer, and Ann M.
Dincer, Plaintiffs,

v.

UNITED STATES of America, and
the United States Small Business
Administration, Defendants.

No. CIV.3:99–CV–40161.

United States District Court,
S.D. Iowa,
Davenport Division.

Jan. 28, 2003.

Ann M. Dincer, Davenport, IA, pro se.

Dale G. Haake, Katz McHard Balch Lefstein & Fieweger, PC, Rock Island, IL, for plaintiffs.

Gary L. Hayward, Assist. U.S. Atty., Des Moines, IA, for U.S., defendant.

Glenn P. Harris, Gen. Counsel, Washington, DC, for Small Business Admin., defendant.

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT

GRITZNER, District Judge.

This matter comes before the Court on Defendants' Motion to Dismiss or in the Alternative, Motion for Summary Judgment. A hearing on the Motions was held October 22, 2002. Plaintiffs were represented by attorney Dale Haake; Defendants were represented by Glenn Harris, counsel for the U.S. Small Business Administration and Assistant United States Attorney Gary Hayward.

Since its commencement in September of 1999, this case has progressed along a tortured path of complicated litigation involving questions of federal jurisdiction, sovereign immunity, applicable common law, privity of contract, and various legal doctrines. Substantial resources have been expended by the Plaintiffs, the Defendants, and both this District Court and the Court of Appeals. It is beyond question that the litigation process has been a great burden for the Plaintiffs, but their dogged pursuit in this matter has been a creative yet ultimately futile effort to seek a legal remedy where none exists. After detailed analysis of the arguments and underlying circumstances of this case, and for the reasons discussed below, the Court is compelled to find the Defendants' Motion to Dismiss or in the Alternative, Motion for Summary Judgment must be granted.[1]

## I. FACTUAL BACKGROUND

The underlying material facts have been repeatedly set forth by two courts as well as the parties. Accordingly, only the facts essential to the matters now before the Court will be repeated.

Audio Odyssey was a retail electronics store established by Dana Christiansen in 1975. In 1991, Christiansen agreed to sell Audio Odyssey to part owner Dogan Dincer for $270,000. To finance the purchase, Dogan and Ann Dincer applied for a Small Business Administration ("SBA") loan guaranty. Brenton Bank ("Brenton") financed a $200,000 loan payable in monthly installments over seven years; the SBA guaranteed 85 percent of the loan. The loan was secured by Audio Odyssey's accounts receivable, contract rights, general intangibles, inventory, furniture, fixtures, machinery, and equipment. The Dincers personally guaranteed the loan, using their residence and another parcel of land as collateral.

The underlying SBA–Brenton relationship dates back to 1978 when a Guaranty Agreement was entered into by the two parties. The Guaranty stated that all subsequent SBA loans granted by Brenton would be subject to the 1978 agreement. The 1978 Guaranty Agreement provided, inter alia, that (1) the *SBA must give lender* written approval *before lender could sue;* (2) the SBA would arrange field visits; and (3) the SBA must submit SBA form 327 when not following standard operating procedures. The loan agreement also stated it would be enforced in accordance with federal law pursuant to 13 C.F.R. § 101.1(d). Audio Odyssey's loan

---

1. The Plaintiffs' aggressive approach to this litigation in the face of substantial legal obstacles has progressed to the point of filing their own Motion for Partial Summary Judgment on the negligence and contract theories, in which they allege that there are no genuine issues of material fact and the case may be decided as a matter of law. For the reasons set forth in this Order, the Court finds the Plaintiffs' motion to be without merit, and that motion will be denied by separate order.

agreement included a clause stating the loan would be subject to the provisions of the 1978 Guaranty Agreement.

In late 1994, Audio Odyssey began experiencing financial difficulties. In the nine-month period beginning November 1, 1994, Audio Odyssey's payment history was marked by several missed or partial payments. By July 12, 1995, Audio Odyssey was two months behind on its loan. In addition, Audio Odyssey was $48,000 in arrears on state sales and federal withholding taxes and was $10,000 overdrawn on its business checking account also held by Brenton. Sometime before July 12, 1995, Brenton became aware Audio Odyssey was going to hold an out of the ordinary sale.

Given Audio Odyssey's recent payment history, Brenton loan officer John Bradley ("Bradley") became concerned the inventory securing Audio Odyssey's loans would be sold and the proceeds would be used to payoff Audio Odyssey's other pending debts. Therefore, on July 12, 1995, Bradley contacted SBA administrator Roger Hoffman ("Hoffman") to inform him of the pending sale and the condition of the Audio Odyssey account. Hoffman verbally agreed to a seizure of the collateral if a workout was not possible.

On July 13, 1995, the Dincers made a deposit at Brenton intended to cover the overdue June and July payments. However, Brenton applied the deposit to Audio Odyssey's other delinquent accounts. On the same day, Dincer tried to contact both the SBA and Brenton to arrange a work-out proposal. Dincer made several phone calls to Bradley but never reached him.

At 8:50 a.m. on July 14, 1995, Brenton hand-delivered Audio Odyssey a letter advising Audio Odyssey its account was in default and demanding payment in full by 9:00 a.m. Unable to pay on such short notice, Dincer requested thirty days and referred Brenton to Audio Odyssey's attorney, Stephen Wing. By 12:12 p.m., Wing sent a fax stating Brenton was operating on misinformation, because Audio Odyssey was not in default.

Later that same day, Brenton obtained a writ of replevin from the Iowa District Court for Scott County. At 4:15 p.m. on July 14, 1995, Scott County Sheriff's deputies, acting pursuant to the writ, seized Audio Odyssey's inventory and equipment and locked the doors of Audio Odyssey. On July 17, 1995, Hoffman learned of the deposit and the replevin action. SBA paid Brenton the guaranteed portion of the outstanding loan. SBA never received any proceeds from the seizure. In September of 1999, the Dincers and Audio Odyssey filed suit alleging the SBA negligently performed or failed to perform various procedures, breach of contract, and tortious interference.[2] On June 30, 2000, the District Court granted the Defendants summary judgment on all claims. Plaintiffs' appealed. The Eighth Circuit affirmed in part, reversed in part, and remanded for further proceedings.[3]

## II. PROCEDURAL HISTORY

At an earlier stage in these proceedings, Defendant SBA moved for summary judg-

**2.** Plaintiffs had previously commenced an action against Brenton Bank and others under 42 U.S.C. § 1983 for violation of Fourth Amendment rights in connection with the execution of the writ of replevin. That case was dismissed by Hon. R.E. Longstaff, Chief U.S. District Judge, but then affirmed in part, reversed in part, and remanded for further pro-

ceedings by the appellate court, *see Audio Odyssey, Ltd. v. Brenton First Nat'l Bank*, 245 F.3d 721 (8th Cir.2001), and is now pending in this Court as *Audio Odyssey, Ltd. v. Brenton First Nat'l Bank, et al.*, No. 3:97–cv–40082.

**3.** *Audio Odyssey, Ltd. v. United States*, 255 F.3d 512 (8th Cir.2001).

ment on all claims—negligence, contract, and tortious interference with contract. The Honorable Ronald E. Longstaff granted summary judgment on all pending motions, finding the discretionary functions exception[4] provided sovereign immunity against the negligence and tortious interference claims, and Audio Odyssey lacked privity of contract under Iowa law. Audio Odyssey appealed.

On appeal, the Eighth Circuit affirmed the tortious interference ruling and reversed the negligence and contract rulings. The appellate court found the discretionary functions exception did not apply to claims against the SBA for failure to perform mandatory procedures; however, the discretionary function exception would apply to claims against the SBA for negligent execution of those mandatory procedures. The Eighth Circuit found federal common law, not Iowa law, applied to the contract claim and, on that basis, found Audio Odyssey had privity of contract as a third-party beneficiary to the 1978 loan agreement. The case was remanded for further proceedings. *Audio Odyssey, Ltd. v. United States*, 255 F.3d 512 (8th Cir.2001).

In the present motion, Defendant SBA moves to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and failure to state a claim upon which relief may be granted under Rule 12(b)(6). In the alternative, SBA submits there is no genuine issue of material fact subject to dispute and, therefore, moves for summary judgment under Rule 56(c). Plaintiffs do not claim there are issues of fact which would preclude analysis of the case as a matter of law.

## III. STANDARD FOR DISMISSAL

"A complaint should not be dismissed unless it appears beyond a doubt that plaintiffs cannot prove any set of facts in support of their claim that would entitle them to relief." *Klett v. Pim*, 965 F.2d 587, 589 (8th Cir.1992) (citing *United States v. Aceto Agric. Chem. Corp.*, 872 F.2d 1373, 1376 (8th Cir.1989)). The complaint must reveal an insuperable bar to relief on its face to warrant a Rule 12(b)(6) dismissal. *Id.* (citing *United States v. Aceto Agric. Chem. Corp.*, 872 F.2d 1373, 1376 (8th Cir.1989)).

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). On a motion to dismiss, the court must accept and liberally construe all of plaintiff's facts as true. *Id.* In construing the facts, the court shall "reject conclusory allegations of law and unwarranted inferences". *Silver v. H & R Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997). If a motion to dismiss is pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must only consider the pleadings in determining whether the plaintiff has stated a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). If matters outside the pleadings are considered in rendering its decision, the district court must treat the motion as one for summary judgment and dispose of the motion in accordance with Federal Rule of Civil Procedure 56. *Buck v. F.D.I.C.*, 75 F.3d 1285, 1288 (8th Cir.1996).

---

**4.** The Discretionary Function Exception is set out in 28 U.S.C. § 2680(a). *See* 28 U.S.C. § 2680(a) (2000). The Federal Government's waiver of sovereign immunity in tort claims does not extend "to claims based upon the exercise of performance or the failure to exer-

cise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused". *Audio Odyssey, Ltd. v. United States*, 255 F.3d at 516 (quoting 28 U.S.C. § 2680(a)).

However, when a district court is considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, it has the authority to look to matters outside the pleadings. *Deuser v. Vecera,* 139 F.3d 1190, 1192 n. 3 (8th Cir.1998) (citing *Drevlow v. Lutheran Church, Mo. Synod,* 991 F.2d 468, 470 (8th Cir.1993)).

In its Motion to Dismiss, the SBA avers, (1) Dogan and Ann Dincer lack standing to maintain a claim of negligence against the SBA; (2) Audio Odyssey cannot recover in tort for economic damages absent physical harm under Iowa law, and (3) Audio Odyssey's contract claim as a third-party beneficiary of the 1978 Guaranty between SBA and Brenton fails because (a) the Guaranty grants SBA a *right* to require written consent, it does not impose a *duty* to consent only by writing, and (b) Brenton waived its right to enforce provisions of that guaranty agreement.

## IV. DISCUSSION

### 1. The Dincers Lack Standing

■ "The standing requirement is, at its core, a constitutionally mandated prerequisite for federal jurisdiction, and 'an essential and unchanging part of the case-or-controversy requirement of Article III'." *Mausolf v. Babbitt,* 85 F.3d 1295, 1301 (8th Cir.1996) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). "To establish standing, a party must, at a minimum, have suffered an 'injury-in-fact,' fairly traceable to the defendant's conduct, which is likely to be redressed by a favorable decision." *Johnson v. Missouri,* 142 F.3d 1087, 1088 (8th Cir.1998) (quoting *Brouhard v. Lee,* 125 F.3d 656, 661 (8th Cir.1997)).

In a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56.

Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Titus v. Sullivan,* 4 F.3d 590, 593 (8th Cir.1993) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977)).

■ The SBA argues Dogan and Ann Dincer lack standing to assert claims against the SBA, and, therefore, their claims should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. The Eight Circuit, in the companion to this case, ruled the Dincers lack standing to assert claims for injuries suffered solely by Audio Odyssey.

As a threshold matter, we hold that the Dincers lack individual standing to sue defendants for the replevin. It is well established that a shareholder or officer of a corporation cannot recover for legal injuries suffered by the corporation. *See Heart of Am. Grain Inspection Serv., Inc. v. Mo. Dep't of Agric.,* 123 F.3d 1098, 1102 (8th Cir.1997); *Chance Mgmt., Inc. v. South Dakota,* 97 F.3d 1107, 1115–16 (8th Cir.1996). The rule applies even to a corporation's sole shareholder. *See Smith Setzer & Sons, Inc. v. S.C. Procurement Review Panel,* 20 F.3d 1311, 1317 (4th Cir.1994). Here, it was Audio Odyssey whose premises and personal property were taken, rightfully or not. Any constitutional violations presented by this case were visited

upon Audio Odyssey, and any injuries to the Dincers occurred solely because of their relationship with Audio Odyssey. It is true that the 'shareholder standing rule' does not apply when the alleged injury is distinct from that suffered by the corporation or other shareholders. *See, e.g., Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310, 1318 (9th Cir.1989). The Dincers seek redress for various emotional and reputational injuries stemming from the replevin of the Bank's collateral and the seizure of the premises, including the loss of business relationships with customers and suppliers. We do not think these injuries are "distinct" from the corporation's. A "distinct" injury is one in which the claimant's rights have been violated, not merely one in which the claimant is indirectly harmed because of one party's injury to another. *See, e.g., Gersman v. Group Health Ass'n,* 725 F.Supp. 573, 577–78 (D.D.C.1989) (holding that a Jewish president and principal shareholder of company could not maintain suit under 42 U.S.C. § 1981 against insurer charged with discriminatorily terminating contract with company), *aff'd in relevant part,* 931 F.2d 1565, 1567 (D.C.Cir. 1991), *vacated on other grounds,* 502 U.S. 1068, 112 S.Ct. 960, 117 L.Ed.2d 127 (1992). The premises and replevined items belonged to the corporation, not the Dincers. Doubtless a sole shareholder may suffer shame and humiliation when the corporation is destroyed, but an "emotional injury" exception would swallow the rule against shareholder standing. The district court correctly dismissed the individual claims.

*Audio Odyssey, Ltd. v. Brenton First Nat'l Bank,* 245 F.3d 721, 729 (8th Cir. 2001), *opinion reinstated at,* 286 F.3d 498 (8th Cir.2002) (emphasis added).

In rebuttal to the motion to dismiss for lack of standing, the Dincers merely aver, "Dogan Dincer has standing, as sole shareholder of the business, as he claims damages distinct from Audio Odyssey, and those damages are viable in a negligence action under Iowa law. Dogan and Ann Dincer have standing as privity of contract existed between them and the SBA" (Plaintiffs' Resistance to Motion to Dismiss [hereinafter "Pls.' Res."] at 54). In addition to being conclusory, the argument is unpersuasive. As the Eighth Circuit pointed out, the Dincers' injuries are not distinct from those of the corporation. *Audio Odyssey, Ltd.,* 245 F.3d at 729.

The Eighth Circuit has foreclosed on the issue of standing in the companion case. The Court finds no basis for a different result in this case. Therefore, the Court grants Defendants' motion to dismiss claims asserted by Dogan and Ann Dincer for lack of standing. The Court proceeds to discuss claims of Plaintiff Audio Odyssey, Ltd.

### 2. Negligence Claims: The Economic Loss Doctrine

Audio Odyssey alleges the SBA's negligent conduct caused the closure of the business, lost profits, and lost business opportunity. Audio Odyssey further alleges it suffered damage to its reputation and emotional distress. Audio Odyssey brought the negligence claims against the SBA, a government agency, pursuant to the Federal Tort Claims Act ("FTCA").

Congress enacted the FTCA, which provides a limited waiver of sovereign immunity and thereby allows tort claims against the United States. *See Claude v. United States,* 2001 WL 34008486, at *6 (N.D.Iowa April 12, 2001) (citing *United States v. Muniz,* 374 U.S. 150, 154, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963) (discussing the legislative history and Congressional intent behind the FTCA's limited waiver of sovereign immunity)). The FTCA states, "[t]he

United States shall be liable, ... in the same manner and to the same extent as a private individual under like circumstances, ...". 28 U.S.C. § 2674 (2000).

Title 28 U.S.C. § 1346(b)(1) provides the district court jurisdiction over suits in which the United States is a defendant and states in pertinent part:

> [T]he district courts, ... shall have exclusive jurisdiction of civil actions on claims against the United States for money damages, ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1) (2000).

■ However, a claim against the United States can be maintained only if the law of the state in which the alleged misconduct occurred allows for such an action. *Carlson v. Green*, 446 U.S. 14, 23, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) ("[A]n action under FTCA exists only if the State in which the alleged misconduct occurred would permit a cause of action for that misconduct to go forward."); *Klett v. Pim*, 965 F.2d 587, 589 (8th Cir.1992) (" '[F]ederally imposed obligations, whether general or specific, are irrelevant to our inquiry under the FTCA, unless state law imposes a similar obligation upon private persons.' ") (quoting *Gelley v. Astra Pharmaceutical Prod., Inc.*, 610 F.2d 558, 562 (8th Cir.1979)). In the present case, the alleged negligent misconduct of the SBA took place in Iowa. Therefore, to maintain a claim under the FTCA, Audio Odyssey must establish that a private person under like circumstances, would be liable under Iowa law. *See Appley Bros. v. United States*, 924 F.Supp. 944, 960 (D.S.D.1996), *aff'd*, 164 F.3d 1164 (8th Cir.1999).

■ American law generally opposes recovery in tort for purely economic loss. *See* Herbert Bernstein, *Civil Liability for Pure Economic Loss Under American Tort Law*, 46 Am. J. Comp. L. 111, 111 (1998); Alon Harel & Assaf Jacob, *An Economic Rationale for the Legal Treatment of Omissions in Tort Law: The Principle of Salience*, 3 Theoretical Inquiries in Law 413, 425 n. 30, July 1, 2002. "Pure economic loss" commonly refers to situations in which "the plaintiff has neither suffered personal injury nor damage to tangible property". Bernstein, *supra*, at 111; *see* Harel & Jacob, *supra*, at 425 n. 30 ("[P]ure economic loss is a financial loss other than payment of money to compensate for physical injury to a person or property.").

This per se rule barring recovery for economic loss absent physical injury has evolved in American tort law. *People Express Airlines, Inc. v. Consolidated Rail Corp.*, 100 N.J. 246, 495 A.2d 107, 109 (1985). The case of *Robins Dry Dock & Repair Co. v. Flint* is regarded as establishing the economic loss doctrine. *Id.* In *Robins Dry Dock*, a steamship was dry docked an extra two weeks due to the repair company's negligence. *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 307, 48 S.Ct. 134, 72 L.Ed. 290 (1927). The parties that chartered the steamship sued because they were unable to use the steamer during the delay. *Id.* The court denied their claims finding they had no property interest in the steamship. *Id.* at 308, 48 S.Ct. 134. The steamship owner recovered for lost rents, but the charter parties were limited to damages available in contract and precluded from recovering their economic losses. *Id.* The charter parties' lost profits were in excess of $30,000, whereas the steamship owner's

lost rents amounted to only $3,000. *Id.; see* Richard Epstein, Torts 607 (Aspen Press 1999).

The aim of the doctrine promulgated in *Robins Dry Dock* is to prevent the potential flood of litigation which would occur if such recovery were allowed. *See* Bernstein, *supra* at 112. As Justice Holmes said, "a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other unknown to the doer of the wrong. The law does not spread its protection so far." *Robins Dry Dock,* 275 U.S. at 309, 48 S.Ct. 134 (citation omitted); *Aikens v. Debow,* 208 W.Va. 486, 541 S.E.2d 576, 585 (2000) ("There would be no bounds to actions and litigious intricacies, if the ill effects of negligences of men could be followed down the chain of results to the final effect.") (quoting *Kahl v. Love,* 37 N.J.L. 5, 1874 WL 7397, at *3 (1874)).

In addition to the concern limitless suits would arise, courts have adopted this per se rule barring recovery because of the "highly speculative and remote nature" of purely economic losses. *Gen. Foods Corp. v. United States,* 448 F.Supp. 111, 113 (D.Md.1978); *Petition of Kinsman Transit Co.,* 388 F.2d 821, 823–25 (2d Cir.1968) (denying barge owners recovery for economic losses due to Defendant's barge negligently breaking from its moorings, collapsing a bridge, and halting river transportation); *Getty Refining and Mktg. Co. v. MT FADI B,* 766 F.2d 829, 832 (3d Cir.1985) ("The policy against recovery based on negligence is rooted at least in part on what Professor James has called the 'pragmatic' objection, that while physical harm generally has limited effects, a chain reaction occurs when economic harm is done and may produce an unending sequence of financial effects best dealt with by insurance, or by contract, or by other business planning devices."); *Ma-*

*rine Nav. Sulphur Carriers, Inc. v. Lone Star Indus., Inc.,* 638 F.2d 700, 702 (4th Cir.1981) (affirming the district court's decision that "[t]he economic, nonphysical losses as alleged were too remote to be legally compensable").

■ The application of the economic loss doctrine rests in state tort law. *See* Bernstein, *supra* at 111. In the case at bar, Iowa law applies. Iowa has adopted the "pure economic loss" doctrine which bars recovery in negligence claims absent physical harm. *Nebraska Innkeepers, Inc. v. Pittsburgh–Des Moines Corp.,* 345 N.W.2d 124, 126–29 (Iowa 1984).

The Iowa Supreme Court examined the application of the economic loss doctrine in *Nebraska Innkeepers v. Pittsburgh–Des Moines Corp. Id.* at 126 ("The well-established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable."). In *Nebraska Innkeepers,* businesses lost revenue because the bridge which "served as an artery of commerce" was closed due to structural problems. *Id.* at 125. The plaintiffs sued, inter alia, the bridge contractor, alleging "economic loss such as reduced income, increased expenses, and diminution of the value of investments resulting from the closing of the bridge". *Id.* at 126. *Nebraska Innkeepers* was a case of first impression for the Iowa Supreme Court. *Id.* The court examined the approach taken by other jurisdictions and adopted the economic loss doctrine. *Id.*

> The common thread running through these cases establishes unequivocally that a plaintiff cannot recover for purely economic loss, in the absence of physical injury, against a defendant who has negligently caused the closing of a public bridge or river. We conclude that these authorities are persuasive on the pres-

ent issue before us and, accordingly, hold that plaintiffs cannot maintain a claim for purely economic damages arising out of defendant's alleged negligence because it lacks a legal foundation to support it.

*Id.* at 128.

In *Nelson v. Todd's Ltd.,* the Iowa Supreme Court extended the economic loss doctrine to actions in strict liability. *Nelson v. Todd's Ltd.,* 426 N.W.2d 120 (Iowa 1988). In *Nelson,* a defective meat curing agent caused substantial meat spoilage. *Id.* at 121. The plaintiff claimed loss of business reputation, loss of future profits, and loss of property value. *Id.* at 121–22. The court reasoned that although the damages sought were the foreseeable result of the product's failure, the losses were the disappointed expectations of the consumer, and, therefore, they sounded in contract, not in tort. *Id.* at 125.

█ Iowa has carved out an exception to the pure economic loss doctrine in cases of professional negligence. In *Kemin v. KPMG Peat Marwick,* the court distinguished *Nelson* and allowed recovery absent physical harm where an accounting firm's negligent preparation of an audit report caused plaintiff's loss. *Kemin Industries, Inc. v. KPMG Peat Marwick,* 578 N.W.2d 212, 220 (Iowa 1998). "Our reading of the *Nelson* decision indicates that it was limited to deciding whether purely economic injuries without accompanying physical injury are recoverable under a theory of strict liability in tort. The case does not speak to the specialized situation of professional negligence." *Id.* (citation omitted). This exception has been limited to cases of professional negligence. *See Burns Philp Inc. v. Cox, Kliewer & Co.,* 2000 WL 33361992, at *8 (S.D.Iowa Nov.2, 2000) ("[T]he Court thinks that the only interpretation of the Iowa Supreme Court's holding in *Kemin* is that the economic loss doctrine does not apply to pro-

fessional negligence claims."). This Court finds no legal basis upon which to extend the holding in *Kemin* beyond the unique circumstances presented by an action for professional negligence.

Audio Odyssey alleges three types of economic loss: closure of the business, lost profits, and lost business opportunity. To recover these losses under Iowa law, physical injury must have occurred or an exception must apply.

Audio Odyssey argues recovery is not barred for two reasons. First, Audio Odyssey asserts the "Law of the Case" doctrine bars consideration of SBA's argument that recovery of a negligence claim is not available under Iowa law. *See United States v. Bartsh,* 69 F.3d 864, 866 (8th Cir.1995) (stating that the law of the case doctrine requires a court to adhere to the decisions made in earlier proceedings to insure uniformity, protect parties' expectations, promote judicial economy, and prevent relitigation of settled issues). Plaintiff then argues physical harm did occur when the inventory was seized.

## A. The Law of the Case Doctrine

█ The law of the case doctrine is distinct from the doctrine of res judicata. *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). "Unlike the more precise requirements of res judicata, the law of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Id.* The court goes on to state this doctrine is commonly understood to mean "it is not improper for a court to depart from a prior holding if convinced that it is clearly erroneous and would work a manifest injustice". *Id.* at 618 n. 8.

█ In *Klein v. Arkoma Production Co.,* the Eighth Circuit stated "[w]hen a

case has been decided by [the] Court of Appeals on appeal and remanded to the district court, every question which was before the Court of Appeals and disposed of by its decree is finally settled and determined". *Klein v. Arkoma Prod. Co.*, 73 F.3d 779, 784 (8th Cir.1996). The decision of an appellate court on an issue becomes the law of the case. *Id.; see Jones v. United States*, 255 F.3d 507, 510 (8th Cir. 2001) ("All issues decided by an appellate court become the law of the case. This rule extends not only to actual holdings but also to all issues implicitly settled in prior rulings. On remand, a district court is bound by all such determinations.") (citations omitted). Therefore, the question is whether the Eighth Circuit "decided" recovery was available under Iowa law.

 The law of the case doctrine only prevents a district court from ruling on a matter previously disposed. In this case, the only matters previously *disposed* are those decided by the Eight Circuit Court of Appeals. Therefore, arguments not presented on appeal could not have been decided by the Eighth Circuit. The legal basis for recovery of damages was not addressed by either party in the original motion for summary judgment and could not have been raised for the first time on appeal. *Morrow v. Greyhound Lines, Inc.*, 541 F.2d 713, 724 (8th Cir.1976) ("It is old and well-settled law that issues not

raised in the trial court cannot be considered by this court as a basis for reversal.").

 Audio Odyssey quotes a footnote in the Eighth Circuit opinion and asserts the law of the case established that recovery is available under Iowa law. *Audio Odyssey, Ltd.*, 255 F.3d at 516 n. 3. However, the Eighth Circuit merely noted "[n]either party takes issue with the district court's finding that Iowa law would provide Audio Odyssey with a remedy against a private party in similar circumstances". *Id.* This dicta is not controlling on whether recovery is available under Iowa law because the Eighth Circuit did not expressly or impliedly decide that issue. Plaintiffs wish to read this footnote in the appellate decision as adopting the prior district court finding on this issue, but the footnote can equally if not more appropriately be read to signal the appellate court recognized the finding might not ultimately prevail but would not address an issue not raised by either party. The issues previously before the Eighth Circuit were whether sovereign immunity barred Audio Odyssey's negligence and tortious interference claims and whether lack of privity of contract barred Audio Odyssey's contract claim. The issue of whether recovery was available under Iowa law was not argued. Since the Eighth Circuit did not decide the issue, it cannot be the law of the case.[5]

5. In the context of ultimately deciding that the discretionary exception applied in this case such that sovereign immunity was not waived, Chief Judge R.E. Longstaff did consider as a preliminary matter whether there would be some basis for liability under Iowa law for private parties in a similar situation. Through an examination of the Restatement (Second) of Torts § 324A(a) and § 324A(c), Judge Longstaff concluded there was a basis for liability under Iowa law in the case of private parties. Judge Longstaff was not addressing the economic loss doctrine, the requirement of physical harm, or other matters

in the context as the issues are now framed before this Court. Thus, Judge Longstaff was not confronted by the same issues and analyses that drive the Court's current findings. Therefore, this Court does not regard the prior finding to be the law of the case for issues now being addressed. If Judge Longstaff's ruling could be read as finding recovery was available under Iowa law even considering the current issues, this Court could depart from that ruling. *See Arizona*, 460 U.S. at 618 n. 8, 103 S.Ct. 1382 ("Under law of the case doctrine, as now most commonly understood, it is not improper for a court to depart

## B. Physical Harm

■ Next, Audio Odyssey argues an exception to the general rule barring recovery of economic loss does not apply because physical harm occurred when Audio Odyssey's inventory was seized. Audio Odyssey relies on *Kemin* and suggests that, in that case, the "damage" to a single account receivable is similar to the damage alleged in the present case. In *Kemin*, the defendant accounting firm was retained as plaintiff's auditor. *Kemin*, 578 N.W.2d at 220–21. The Iowa Supreme Court found a client could recover economic losses for the negligent conduct of an accounting firm hired to audit its economic affairs, thereby carving out an exception to the economic loss doctrine in cases of *professional negligence*. *Id.* Audio Odyssey has not alleged professional negligence in the present case, and, therefore, the *Kemin* exception does not apply.

■ Similarly, Audio Odyssey's assertion that seizure of the inventory constitutes physical harm is not supported by Iowa tort law.[6] In *Tomka v. Hoechst Celanese Corp.*, plaintiff's cattle feeding operation suffered losses allegedly due to the defendant's cattle hormone products. *Tomka v. Hoechst Celanese Corp.*, 528 N.W.2d 103, 105 (Iowa 1995). Two hormone products were implanted in cattle at plaintiff's feed operation. *Id.* at 105–06. Plaintiff alleged the hormones caused reduced weight gain in the cattle and brought product liability actions against the manufacturer claiming lost profits and loss of good will. *Id.* at 106, 107 n. 2. The district court granted a directed verdict for the defendant which the Iowa Court of Appeals and the Iowa Supreme Court upheld finding the plaintiff could not recover economic losses on a negligence theory absent physical harm. *Id.* at 106. Plaintiff tried to distinguish his losses by arguing loss of good will was property damage; therefore, he was not seeking purely economic losses. *Id.* at 107 n. 2. The court disagreed stating, "[f]or purposes of warranty and tort analysis, loss of good will is an economic loss". *Id.*

■ *Tomka* is instructive in the present case. *Tomka*, like Audio Odyssey, alleged damage to inventory and reputation. *Id.* at 105. The court found the damages sought were economic losses and, therefore, sounded in contract and were not recoverable in tort. *Id.* at 107 ("We think the damage sustained by Tomka here clearly falls within contract-warranty theories, not tort theories."). Audio Odyssey attempts to distinguish negligent product liability actions from third-party negligence actions. The distinction is unneces-

from a prior holding if convinced that it is clearly erroneous and would work a manifest injustice."); *Conrod v. Davis*, 120 F.3d 92, 95 (8th Cir.1997), *cert. denied*, 523 U.S. 1081, 118 S.Ct. 1531, 140 L.Ed.2d 681 (1998) (finding the law of the case doctrine "does not deprive the district court of the ability to reconsider earlier rulings"). By contrast, the ruling of a *superior court* on an issue *does become the law of the case*. *Conrod*, 120 F.3d at 95 (" 'Law of the case … does not block a superior court from examining the correctness of an earlier decision.' ") (quoting *Avitia v. Metro. Club of Chi., Inc.*, 924 F.2d 689, 690 (7th Cir.1991)). As stated, the issue of recovery under Iowa law was not before the Eighth Circuit and has therefore not been decided by a superior court.

6. Iowa has consistently held the remedy for unfulfilled expectations of a service or product rest in contract, not in tort law. *See, e.g.*, *Determan v. Johnson*, 613 N.W.2d 259, 263 (Iowa 2000) ( "[W]e conclude that the plaintiff's claim is based on her unfulfilled expectations with respect to the quality of the home she purchased. Accordingly, her remedy lies in contract law, not tort law."); *Gunderson v. ADM Investor Servs., Inc.*, 85 F.Supp.2d 892, 922 (N.D.Iowa 2000) (citing *Nebraska Innkeepers* and reasoning, under Iowa law, claims for economic losses are recoverable only in contract, not in tort).

sary because economic losses due to a third party's negligence are not recoverable under Iowa law. *Nebraska Innkeepers*, 345 N.W.2d at 128.

## C. Recovery for Negligent Undertaking Under Restatement (Second) of Torts § 323 and 324A

■ Alternatively, Audio Odyssey alleges the SBA is liable for its damages because SBA breached a "Good Samaritan Duty" under Restatement (Second) of Torts §§ 323 and 324A. Citing *Theisen v. Covenant Med. Ctr., Inc.*, Audio Odyssey alleges a duty is imposed and recovery allowed under Iowa law for the negligent performance of an undertaking. *See Theisen v. Covenant Med. Ctr., Inc.*, 636 N.W.2d 74, 82 (Iowa 2001).

In *Theisen*, the Iowa Supreme Court found an employer was not liable to the employee plaintiff for negligent performance of an investigation because the plaintiff suffered no physical harm. *Id.* at 82–83 (citing Restatement (Second) of Torts § 323 (1965)). The court reasoned that, even if the investigation was conducted negligently, the employer had not assumed a duty under Restatement (Second) of Torts § 323 to the employee because the investigation was not being conducted for the benefit of the employee. *Id.* The court further reasoned a duty may run to a third party under Restatement (Second) of Torts § 324A, but the party assuming the duty would only be liable to the third party for physical harm. *Id.* (citing Restatement (Second) of Torts § 324A (1965)).

Audio Odyssey's reliance on *Theisen* is misplaced. Audio Odyssey's negligence claims under the Good Samaritan doctrine fail for the same reason they fail under the economic loss doctrine. That is, Audio Odyssey .has not suffered physical harm and cannot recover in tort under Iowa law. As *Theisen* made clear, a plaintiff must show physical harm to recover damages resulting from the negligent execution of a duty. *Id.* This Court does not find the Plaintiffs' loss of immediate control over their inventory and business operation to constitute the type of physical harm that is required by the law.

## D. Recovery for Loss of Reputation and Pain and Suffering

■ In addition to alleging SBA caused the company to go out of business, lose profits, and lose business opportunity, Audio Odyssey alleges SBA caused mental anguish and damage to its reputation. However, these damages are not recoverable under Iowa law in the present case.

In *Lawrence v. Grinde*, the Iowa Supreme Court held "reputation damages are not a legal remedy available in a damage action premised on a defendant's negligent act". *Lawrence v. Grinde*, 534 N.W.2d 414, 420 (Iowa 1995). Likewise, "a party may not recover damages for emotional distress in an action premised on mere negligence where the plaintiff has suffered no physical harm". *Id.*

In that case, Mr. Lawrence was a local business owner received advice about filing his bankruptcy petition from attorney Grinde. *Id.* at 414, 416–17. As a result of that advice, Lawrence was indicted and tried for bankruptcy fraud; the local and regional newspapers carried the story. *Id.* at 417. Lawrence brought a lawsuit against Grinde alleging damage to reputation and emotional distress. *Id.* The judge granted defendant's motion for a directed verdict on the damage to reputation claim, finding those damages were not recoverable under Iowa law, but allowed the emotional distress claim to go to the jury. *Id.* On appeal, the court found Iowa law did not recognize damages for emotional distress in a negligence action absent physical harm, and the claim should not have been submitted to the jury. *Id.* at 423.

The court further held, "[o]nly in 'special cases involving peculiarly personal subject matters' do the majority of jurisdictions recognize that mental anguish may be a foreseeable damage resulting from attorney negligence". *Id.* at 422 (quoting *Selsnick v. Horton*, 96 Nev. 944, 620 P.2d 1256, 1257 (1980)). The court defined "special cases" as those "so coupled with matters of mental concern or solicitude, or with the sensibilities of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering, and it should be known to the parties from the nature of the [obligation] that such suffering will result from its breach". *Id.* at 421. Examples are cases involving medical malpractice resulting in the death of a fetus, a son's emotional trauma witnessing the injury of his mother, negligent delivery of a telegram announcing the death of a loved one, and the negligent handling of funeral services. *Id.*

In the case at bar, Audio Odyssey makes two conflicting arguments why recovery for damage to its reputation and emotional distress is available. Audio Odyssey's first argument fails for the same reason all its negligence claims fail: Audio Odyssey did not suffer physical harm when its inventory was seized. Absent physical harm or an exception to the general rule, recovery for damage to reputation and emotional distress is not available.[7] *See id.* at 419–422.

Next, Audio Odyssey suggests its claim falls within the "peculiar personal subject matter" exception because "the SBA was well aware of the emotional trauma of business failures". However, Audio Odyssey's claim of damage due to the negligent conduct of the SBA can hardly be considered an exception to the general rule. In *Lawrence*, the Iowa Supreme Court found the negligent conduct of the defendant, which lead to the plaintiff's arrest and prosecution, did not fall within the exceptions noted. *See Lawrence*, 534 N.W.2d at 422. It is inconceivable Audio Odyssey's circumstance fits one of the "narrow circumstance" exceptions to the general rule mentioned above.

### E. Audio Odyssey's Negligence Claims Sound in Contract, Not in Tort

Audio Odyssey has couched claims against the SBA for failure to follow its own operating procedures, as a negligence action permissible against the United States under the FTCA. First, Audio Odyssey argues its losses are the result of the negligent conduct of the SBA, an allegation which arises in tort. However, in response to the SBA's assertion the damages alleged are not recoverable in tort under Iowa law, Audio Odyssey asserts it has a contractual interest and, therefore, economic losses are recoverable.

Audio Odyssey's argument necessarily fails. Under Iowa law, injury for economic losses which sound in contract are not cognizable in a tort action. *Nelson*, 426 N.W.2d at 125. Audio Odyssey cannot have it both ways. By its own admission, Audio Odyssey's claims against the SBA sound in contract and not in tort. Therefore, Audio Odyssey cannot recover

---

7. Audio Odyssey suggests the SBA (Hoffman) should have "mitigated the damages", and failure to do so was willful and reckless, which makes a claim for damage to reputation recoverable (Pls.' Res. at 31). It is unclear whose damage should have been mitigated. When an SBA guaranteed loan is liquidated, the SBA tries to mitigate its own damages, not the damage to the borrower in default. The SBA did not owe Audio Odyssey a duty to "mitigate" damages.

on its negligence claims against the SBA under Iowa law. *Tomka,* 528 N.W.2d at 105.

### 3. Contract Claim [8]

▓▓▓▓ The Eighth Circuit reversed the district court's grant of summary judg-

ment on Audio Odyssey's breach of contract claim and made two findings. First, Audio Odyssey had privity of contract to the 1978 Guaranty Agreement between the SBA and Brenton as a third-party beneficiary to that agreement. Second, federal common law, not Iowa law, applies to the

---

**8.** The Tucker Act, 28 U.S.C. § 1346 (2000), grants the district courts concurrent jurisdiction with the Federal Claims Court over contract claims *not in excess of $10,000.* However, the Contract Dispute Act ("CDA"), 41 U.S.C. § 601 (2000), further limits the District Court's jurisdiction over contract claims against the United States. The aim of the CDA is to facilitate formation and resolution of government contracts. *See Campanella v. Commerce Exch. Bank,* 137 F.3d 885, 890 (6th Cir.1998).

To determine whether a claim falls under the Tucker Act or the CDA, the court must determine if the claim is contractual in nature. *RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1137 (6th Cir.1996) (citing *Megapulse, Inc. v. Lewis,* 217 U.S.App. D.C. 397, 672 F.2d 959, 967 (D.C.Cir.1982)). " 'The classification of a particular action as one which is or is not "at its essence" a contract action depends both on the source of the rights upon which the plaintiff bases its claim, and upon the type of relief sought (or appropriate).' " *Id.* (quoting *Megapulse, Inc.,* 672 F.2d at 968). Audio Odyssey claims as a third-party beneficiary to the 1978 Loan Guaranty, it was damaged because the SBA breached the terms of the SBA and Brenton Bank contract by not giving Brenton *written* consent to sue upon the loan. Audio Odyssey requests money damages of $200,000 as a result of that breach. Clearly, Audio Odyssey's claims arise from a contract between Brenton and the SBA, a United States agency. It is also clear the dispute involves the terms of the contract, and the amount of alleged damage is in excess of $10,000. Arguably, the contract claim falls under the provision of the Tucker Act, giving exclusive jurisdiction to the Federal Claims Court.

The Court is aware of a split among the Circuit Courts of Appeals on the issue of the CDA's effect upon jurisdiction of district courts in contract disputes with agencies such as the SBA. *Compare In re Liberty Constr.,* 9 F.3d 800, 801–02 (9th Cir.1993) (interpreting the CDA narrowly and finding it did not with-

draw district court jurisdiction over contract claims, regardless of the amount sought, if there was an independent basis for jurisdiction), *with Campanella,* 137 F.3d at 890–91 (affirming the district court's dismissal of a claim against the SBA for breach of contract stating, "the sue or be sued clause [of the SBA] is a jurisdictional grant and not simply a waiver of sovereign immunity, it is clear to us that the CDA operates to withdraw the grant") (citation omitted); *Serra v. United States Gen. Servs. Admin.,* 667 F.Supp. 1042, 1047–51 (S.D.N.Y.1987), *aff'd,* 847 F.2d 1045 (2d Cir.1988) (finding the CDA " 'remov[ed] jurisdiction of the district courts over actions or claims against the United States, regardless of the amount in controversy, when such actions are founded upon express or implied in fact contract with the federal government' ") (quoting *Chemung County v. Dole,* 781 F.2d 963, 967 (2d Cir.1986)); *A & S Council Oil Co. v. Lader,* 56 F.3d 234, 239 (D.C.Cir.1995) (finding an action brought against the SBA by a small business for losses on their minority set aside contracts were contract claims which were grounded on the CDA and therefore the district court lacked subject matter jurisdiction).

The Court is also aware of *V S Limited Partnership. v. Dep't of Housing and Urban Dev.,* 235 F.3d 1109 (8th Cir.2000), regarding jurisdiction over a suit against HUD for breach of an alleged oral modification or forbearance agreement seeking both equitable and monetary relief, in which jurisdiction was found to lie with the Court of Federal Claims.

However, in considering the issue, this Court has weighed several factors: (1) no party has raised the jurisdictional question; (2) another judge of this district court and the Court of Appeals have previously addressed the merits of the case; (3) substantial litigation has occurred on the merits; (4) another federal court would be confronted with the same underlying legal issues; and (5) the law on this jurisdictional issue is arguably unset-

contract claim. *Audio Odyssey*, 255 F.3d at 522.

 In its Motion to Dismiss, the SBA asserts the provision in the 1978 Guaranty Agreement *grants a right* upon the nonholder of the note, it *does not impose a duty* upon the nonholder. The provision states in pertinent part:

Lender shall hold the Loan Instruments, and shall receive all payments of principal and interest until transfer of the note to SBA. Holder of the note (Lender or SBA) shall not, without prior written consent of the other: (a) make or consent to any substantial alteration in the terms of any Loan Instrument ... (b) make or consent to releases of collateral having a cumulative value, as reasonably determined by the holder of the note, which is more than 20 percent of the original loan amount; (c) accelerate the maturity of any note; (d) sue upon any Loan Instrument; or (e) waive any claim against any borrower, guarantor, obligor or standby creditor arising out of any Loan Instrument.

(Pls.' Exh. 1, Complaint [Clerk's No. 1] ).

At the time of the liquidation action, Brenton was the holder of the note, not the SBA. A *duty* was imposed on Brenton Bank to provide the SBA prior written consent. The SBA therefore had a *right* to grant or deny Brenton's decision to take certain actions. It is undisputed the SBA did orally consent to Brenton's action during the July 12, 1995, phone conversation between Hoffman and Bradley.

In resistance to the motion to dismiss the contract claims, Audio Odyssey asserts the Eighth Circuit decided Audio Odyssey was a third-party beneficiary of the agreement between SBA and Brenton, and, therefore, SBA's argument that the contract claims fail violates the "law of the case" doctrine. Rather than provide legal analysis for its assertion, Audio Odyssey argues it has privity of contract because the Loan Authorization Agreement in its SBA loan authorization incorporates the 1978 Guaranty. However, the incorporation of the 1978 Loan Guaranty is not being contested in the present action; rather, the SBA argues Audio Odyssey cannot impose a duty as a third-party beneficiary to a contract provision that does not provide one.

 The Court recognizes a party may enforce a *right* acquired through its posture as a third-party beneficiary to a contract, but it is also subject to all the defenses to which the parties to the contract are subject. Restatement (Second) of Contracts § 309 (1981).[9] In addition, "[u]nless a contract expressly prohibits the parties from modifying their duties to intended beneficiaries, which the contracts in this case do not do, the parties can modify the contract without any such beneficiary's

---

tled. Accordingly, the Court does not resolve this matter on the jurisdictional basis.

9. Restatement (Second) of Contracts § 309 states:

(1) A promise creates no duty to a beneficiary unless a contract is formed between the promisor and the promisee; and if a contract is voidable or unenforceable at the time of its formation, the right of any beneficiary is subject to the infirmity.

(2) If a contract ceases to be binding in whole or in part because of impracticability, public policy, non-occurrence of a condition, or present or prospective failure of

performance, the right of any beneficiary is to that extent discharged or modified.

(3) Except as stated in Subsections (1) and (2) and in § 311 or as provided by the contract, the right of any beneficiary against the promisor is not subject to the promisor's claims or defenses against the promisee or to the promisee's claims or defenses against the beneficiary.

(4) A beneficiary's right against the promisor is subject to any claim or defense arising from his own conduct or agreement.

Restatement (Second) of Contracts § 309 (1981).

consent unless and until he justifiably relies on it". *Price v. Pierce*, 823 F.2d 1114, 1122 (7th Cir.1987). *See Genentech, Inc. v. Regents of the Univ. of Cal.*, 952 F.Supp. 617, 620 (S.D.Ind.1996) ("The Restatement (Second) of Contracts § 311 provides that, in the absence of a term in the third-party beneficiary contract prohibiting modification of a duty to an intended beneficiary, the promisor and promisee retain the power to discharge or modify the agreement by subsequent agreement.").

Audio Odyssey was not aware of the written consent provision of the 1978 Loan Guaranty; therefore, it could not prevent SBA and Brenton from discharging one of its terms. As Audio itself declares, "the Dincers did not have knowledge of the specific provisions in the 1978 Guaranty Agreement (Deferred Participation) requiring prior written permission to sue upon the note or to accelerate the maturity of the note, they were unable to protect themselves" (Pls.' Res. at 48). Audio Odyssey's lack of knowledge of the provision does not somehow impose a duty on the SBA to assert a right it chose to waive. As such, the Court agrees with the SBA that no duty was imposed on the SBA to provide written consent before Brenton could take action.

Alternatively, SBA argues Audio Odyssey cannot maintain a contract claim as a third-party beneficiary because its rights were the same as those of the holder of the claim. "[A] third party beneficiary that brings a contract claim steps into the shoes of the promisee and is therefore subject to any claim or defense that the promisor would have against the promisee." *Bituminous Coal Operators' Ass'n, Inc. v. Connors*, 867 F.2d 625, 632 (D.C.Cir.1989); *see also First Hartford Corp. Pension Plan & Trust v. United States*, 194 F.3d 1279, 1289 (Fed.Cir.1999) ("[A] party standing outside of privity by contractual obligation stands in the shoes

of a party within privity."); *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 313 (2d Cir.1990) ("Third party beneficiaries generally are subject to defenses that the promisor could raise in a suit by the promisee.") (citing J. Calamari & J. Perillo, *The Law of Contracts* § 17–8, at 623–24 (2d ed.1977)). As such, SBA argues Brenton waived its right to bring suit against the SBA for failure to give written consent; therefore, Audio Odyssey's right was also waived.

In *National Liberty Corp. v. Wal–Mart Stores, Inc.*, the Eighth Circuit found that a contract provision expressly requires a written assignment, but a party's conduct may waive its right to require written consent. *Nat'l Liberty Corp. v. Wal–Mart Stores, Inc.*, 120 F.3d 913, 915 (8th Cir. 1997). In the present case, Brenton, as holder of the note, could have required SBA to provide written consent to foreclose on the loan. However, Brenton did not require written consent; rather, it acted upon the oral consent given it by the SBA (Hoffman) during the July 12, 1999, telephone conversation. Because Audio Odyssey is a third-party beneficiary to the 1978 Loan Guaranty, it steps into the shoes of Brenton; Brenton waived its right. As previously discussed, Audio Odyssey cannot claim it relied on the 1978 Loan Guaranty to its detriment—by its own admission, Audio Odyssey was unaware of the written consent provision of that agreement. Audio Odyssey does not assert a provision, nor does one exist, requiring the SBA to provide *Audio Odyssey* with written consent before Brenton could foreclose on the loan.

Therefore, Audio Odyssey has not stated a contract claim upon which relief may be granted. Defendant's motion to dismiss the contract claim under Federal Rule of Civil Procedure 12(b)(6) is granted.

## V. CONCLUSION

Plaintiffs, Dogan and Ann Dincer, lack standing to assert claims against the SBA. The Defendants' motion to dismiss the claims of these Plaintiffs for lack of jurisdiction is **granted**.

In ruling on Defendants' motion to dismiss Audio Odyssey's negligence claims for failure to state a claim upon which relief may be granted, the Court accepts as true all allegations Audio Odyssey asserts against the SBA. However, the Court finds the relief Audio Odyssey seeks is not recoverable under Iowa law. Therefore, Defendants' motion to dismiss the negligence claims is **granted**.

Similarly, Audio Odyssey cannot recover the damages it seeks as a third-party beneficiary to the 1978 Loan Guaranty between the SBA and Brenton Bank. Defendants' motion to dismiss the breach of contract claim is **granted**.

Defendants in the alternative made a motion for summary judgment on the same grounds. The Plaintiffs agree there are no genuine issues of material fact and that the claims presented can be resolved as a matter of law. The Defendants' Motion for Summary Judgment is also **granted**.

The above-entitled action is hereby **dismissed**.

**IT IS SO ORDERED.**